UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT COLEMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>T. VIRGA, et al.,<br><br>    Defendants. | No. 2: 17-cv-0851 KJM KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

    Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the amended complaint filed September 5, 2017, as to defendants Curren, Haring, Hinrichs, Lynch, Virga, Walcott and Wright. (ECF No. 13.)

    Pending before the court is the motion to dismiss filed on behalf of defendants Haring, Hinrichs, Lynch, Walcott, Wright and Virga. (ECF No. 41.) Defendant Curren has not been served.

    In his opposition, plaintiff voluntarily dismisses defendants Curren, Wolcott and Wright. (ECF No. 47 at 12.) On May 10, 2019, the undersigned recommended dismissal of defendant Curren based on plaintiff's failure to provide documents for service of defendant Curren. (ECF No. 45.) Accordingly, the May 10, 2019 findings and recommendations are vacated. Defendants Curren, Wolcott and Wright are dismissed pursuant to Federal Rule of Civil Procedure 41(a).

1

Defendants move to dismiss plaintiff's amended complaint for failing to state potentially colorable claims for relief, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants also move to dismiss plaintiff's claims on the grounds that they are barred by the doctrine of res judicata. Finally, defendants move to dismiss the claims on the grounds of qualified immunity.

For the reasons stated herein, the undersigned recommends that defendants' motion be granted.

II. Plaintiff's Allegations

This action proceeds on the amended complaint filed September 5, 2017. (ECF No. 13.) Plaintiff filed an amended complaint on September 1, 2017, that contains several exhibits. (ECF No. 12.) In the September 5, 2017 amended complaint, plaintiff refers to the exhibits attached to the September 1, 2017 amended complaint. As discussed herein, some of the exhibits attached to the September 1, 2017 are incorporated by reference.

The September 5, 2017 amended complaint identifies defendant Virga as the Warden of California State Prison-Sacramento ("CSP-Sac"), where the alleged deprivations occurred. (ECF No. 13 at 7.) The September 5, 2017 amended complaint identifies defendant Haring as a Facility Sergeant. (Id. at 7.) The September 5, 2017 amended complaint does not describe the duties of defendants Hinrich and Lynch. However, exhibits attached to the September 1, 2017 amended complaint, to which plaintiff refers, indicate that defendant Hinrichs is a Correctional Counselor and defendant Lynch is the Appeals Coordinator,

*Defendants Hinrich, Lynch and Virga*

Plaintiff alleges that he requires single cell housing based on mental illness. (ECF No. 13 at 2-3.) Plaintiff alleges that in 2004, prison psychologist Dias requested that plaintiff receive single cell status for mental health reasons. (Id. at 4.) Prison officials at California State Prison-Centinella denied this request. (Id.) Plaintiff alleges that the failure of prison staff to accommodate his need for special housing based on his mental health contributed to the deterioration of his mental health. (Id.) As a result of the deterioration of his mental health, plaintiff was placed in the Crisis Treatment Center ("CTC") of various prisons for suicidal ideation/suicide attempts and was involuntarily medicated for three years. (Id. at 5.)

2

Plaintiff alleges that in 2013, defendants Hinrich, Lynch and Virga denied his requests for single cell housing on the grounds that plaintiff did not have a history of in-cell physical or sexual violence against a cellmate. (Id. at 2-3.) In other words, defendants Hinrich, Lynch and Virga denied plaintiff's request for single cell housing without regard to plaintiff's mental health needs. Plaintiff alleges that these defendants failed to consider his mental health needs pursuant to a "practice or custom." (Id. at 13.) Plaintiff appears to claim that this was a policy or practice of the California Department of Corrections and Rehabilitation ("CDCR"), because he alleges that in 2016, CDCR Secretary Kernan issued a memorandum clarifying that prison staff were to consider, among other things, inmate mental health when considering whether to grant single cell status.[1] (Id. at 3; ECF No. 12 at 32-34.)

*Defendant Haring*

Plaintiff alleges that in September 2011, he was housed in a cell containing side-by-side beds pursuant to a policy carried out by defendant Virga requiring certain disabled inmates to be housed only in cells with side-by-side beds. (Id. at 7.) Plaintiff alleges that side-by-side beds aggravate his mental illness. (Id. at 5.) Plaintiff alleges that he expressed his housing concerns to defendant Haring. (Id. at 7.) Plaintiff alleges that defendant Haring refused to move him from the cell even after plaintiff warned him that the housing arrangement would be harmful to his mental disorder. (Id. at 7-8.)

/////
/////
/////

---

[1] The 2016 Kernan memorandum is attached to the September 1, 2017 amended complaint. (ECF No. 12 at 32-34.) Plaintiff refers to this memorandum in the operative September 5, 2017 amended complaint. (ECF No. 13 at 3.) Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, a document may be properly considered and "is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), reversed on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). The authenticity of the 2016 Kernan memorandum is not questioned. Accordingly, the undersigned considers this memorandum in evaluating defendants' motion to dismiss.

III. Res Judicata

"Res judicata challenges may properly be raised via motion to dismiss for failure to state a claim under Rule 12(b)(6)." Thompson v. Cty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994); see also Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984).

A. Legal Standards

Generally, the preclusive effect of a prior judgment is referred to as res judicata. Taylor v. Sturgell, 553 U.S. 880, 892 (2008); Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir. 1988). Res judicata includes both claim preclusion and issue preclusion. Americana Fabrics, Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1529 (9th Cir. 1985); Robi, 838 F.2d at 321.

Claim preclusion "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action. . . . The doctrine is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (internal citations and quotation marks omitted). The Ninth Circuit has identified four factors that should be considered by a court in determining whether successive lawsuits involve an identity of claims:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;

(2) whether substantially the same evidence is presented in the two actions;

(3) whether the two suits involve infringement of the same right; and

(4) whether the two suits arise out of the same transactional nucleus of facts. See C.D. Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir.1987); accord Headwaters Inc. v. United States Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005); Littlejohn v. United States, 321 F.3d 915, 920 (9th Cir. 2003). "The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." Owens, 244 F.3d at 714.

Similarly, issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or

not the issue arises on the same or different claim." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). "A party invoking issue preclusion must show:

(1) the issue at stake is identical to an issue raised in the prior litigation;

(2) the issue was actually litigated in the prior litigation; and

(3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." Littlejohn, 321 F. 3d at 923. The "actually litigated" requirement is satisfied where the parties "have a full and fair opportunity to litigate the merits of the issue." Id.

B. Discussion

Defendants argue that plaintiff raised the same claims he now raises against defendant Haring in Coleman v. CDCR, et al., 2:13-cv-1021 JAM KJN P. On March 6, 2017, plaintiff voluntarily dismissed 13-1021 with prejudice. (See 13-1021, ECF No. 131.) Defendants contend that a voluntary dismissal with prejudice is a final judgment on the merits. See Overby v. International Longshore and Warehouse Union Local Chapter Eight, 2018 WL 7200662 at *8-9 (D. Ore. 2018) (a dismissal with prejudice in federal court general constitutes a final judgment on the merits for purposes of the res judicata doctrine.) Therefore, defendants contend that plaintiff's claims against defendant Haring are barred by issue preclusion.

Case 13-1021 proceeded, in part, on a claim that defendant Haring violated plaintiff's Eighth Amendment rights in 2011 by placing him in a cell with side-by-side beds. (13-1021 at ECF No. 29 at 6-7.) On December 9, 2015, the court dismissed this claim against defendant Haring without prejudice based on plaintiff's failure to exhaust administrative remedies. (Id., at ECF No. 77.) On March 3, 2017, plaintiff voluntarily dismissed the remaining claims with prejudice. (Id., at ECF No. 131.)

A dismissal without prejudice is not an adjudication on the merits and does not have res judicate effect. Vincze v. Robinson, 2004 WL 1435136 at *1 (9th Cir. 2004). Accordingly, plaintiff's claims against defendant Haring in the instant action are not barred by issue preclusion.

Defendants argue that plaintiff's claims against defendants Hinrich, Lynch and Virga are barred by claim preclusion because plaintiff could have raised these claims in case 13-1021, but

5

did not. Defendants argue that "regardless of the type of housing plaintiff was assigned (side-by-side cells, or single cells), the crux of plaintiff's claims in both this action and the case 13-1021 is that defendants violated his Eighth Amendment rights by making housing decisions without regard to the effect it would have on his mental health." (ECF No. 41-1 at 9.) Defendants argue that case 13-1021 and the instant action arise out the same transactional nucleus of facts.

As discussed above, claim preclusion applies when there is a final judgment on the merits. The undersigned finds that the dismissal of plaintiff's claims against defendants Haring in case 13-1021 without prejudice does not bar plaintiff's claims against defendants Hinrichs, Lynch and Virga in the instant action.

Moreover, for the reasons stated herein, the undersigned finds that plaintiff's claims against defendants Hinrichs, Lynch and Virga do not arise out of the same transactional nucleus of facts as the claims raised against defendant Haring in case 13-1021.

In <u>Howard v. City of Coos Bay</u>, 871 F.3d 1032, 1040 (9th Cir. 2017), the Ninth Circuit held that claim preclusion does not apply to claims that accrue after the filing of the operative complaint. However, "a new actual event does not necessarily give rise to a new claim where the challenge is to the same ongoing procedure or policy and the new factual events is alleged 'only as an 'example' of … [a] long-standing practice of non-compliance with [the law]." <u>Yagman v. Garcetti</u>, 743 Fed.Appx. 837, 839-40 (9th Cir. 2018) (quoting <u>Turtle Island Restoration Network v. U.S. Dep't. of State</u>, 673 F.3d 914, 918 (9th Cir. 2012).) "[C]laim preclusion isn't defeated where '[d]istinct conduct is alleged only in the limited sense that every day is a new day, so doing the same thing today as yesterday is distinct from what was done yesterday.'" <u>Id.</u> (internal citations omitted).

Plaintiff's claims against defendants Hinrichs, Lynch and Virga do not challenge the same ongoing procedure or policy alleged against defendants Haring in case 13-1021. In case 13-1021, plaintiff alleged that defendant Haring subjected him to side-by-side housing in 2011. In the instant action, plaintiff alleges that defendants Hinrichs, Lynch and Virga denied his request for single cell housing in 2013. These claims do not involve "the same thing as yesterday."

////

6

For the reasons discussed above, defendants' motion to dismiss on the grounds that plaintiff's claims are barred by res judicata should be denied.

V. Alleged Failure to State Potentially Colorable Claims for Relief

    A. Legal Standard for 12(b)(6) Motion

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. Iqbal, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 956 (9th Cir. 2013). Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

Pro se pleadings are held to a less-stringent standard than those drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). However, the court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (citing Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981)).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the

propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

### B. Legal Standard for Eighth Amendment Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9h Cir. 1997).)

Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." McGuckin, 974 F.2d at 1059-60. Deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interest or safety.'" Farmer, 511 U.S. at 835. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth

Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

C.  Discussion

Plaintiff alleges that in 2011 defendant Haring, a Facility Sergeant, housed plaintiff in a cell containing side-by-side beds which aggravated his mental illness.  Plaintiff alleges that in 2013, defendants Hinrichs, Lynch and Virga denied plaintiff's request for single cell housing without regard to plaintiff's mental health needs.

In the motion to dismiss, defendants argue that in Womack v. Virga, 2013 WL 1194953 (E.D. Cal. March 22, 2013) "this Court found circumstances quite similar to plaintiff's insufficient to state an Eighth Amendment claim."  (ECF No. 41-1 at 6.)  Defendants argue that like the plaintiff in Womack, plaintiff herein alleges that he suffers from a mental health condition that requires single-cell housing, but admits that he had no history of in-cell violence and there is no suggestion that plaintiff had any victimization.

Defendants have misconstrued plaintiff's claim regarding the denial of his request for single cell status.  Plaintiff is alleging that defendants considered only whether he had a history of in-cell violence or victimization in denying his request for single cell housing, and failed to consider his mental health needs.  In Womack, the plaintiff also alleged that the defendants failed to consider his mental health needs in denying his request for single cell status.  2013 WL 1194953 at * 1-2.  The court in Womack did not find that prison officials did not violate the Eighth Amendment when they denied single cell status after considering only whether the inmate had a history of in-cell violence and victimization.

Defendants next argue that plaintiff's exhibits do not support plaintiff's claim that he required single cell housing or that he should not have been housed in a side-by side cell.  The undersigned addresses this argument herein.

In the September 5, 2017 amended complaint, plaintiff alleges that defendant Haring refused his request to be removed from the cell with side-by-side beds.  (ECF No. 13 at 7.)  Plaintiff goes on to allege that on October 1, 2011 psychiatrist Glosse "alerted officials of the perils such cell condition" would have on his physical and mental wellbeing.  (Id. at 8.)

////

9

Attached to the September 1, 2017 amended complaint is a copy of a report dated October 1, 2011, by a psychologist addressing plaintiff's concerns regarding being housed in a cell with side-by-side beds.[2] (ECF No. 12 at 46.)  This report states,

> I/P carries a dx of paranoid schizophrenia (although not medicated at the time) and reports that since he has several cellies over the last many months, and the layout of his cell is such that both beds are in very close proximity, he suffers from panic attacks and severe anxiety.  He states that he has asked custody to please be housed in one of the other cells where there are bunk beds or another arrangement that will not trigger his anxiety.  When that did not happen he finally felt that he could not live with the constant anxiety and pressure anymore and told custody that he would rather just kill himself than keep living in fear.  After discussing with the I/P different approaches to trying to effect a change in cells, he agreed to go back to his housing and talk to custody once more calmly about his request.  This clinician will also write a recommendation to that effect in the discharge orders.  It was stressed to I/P that the decision to change housing is solely in the discretion of custody.

(ECF No. 12 at 46.)

Plaintiff does not claim that defendant Haring had knowledge of the October 1, 2011 psychologist report or recommendation discussed in that report when he denied plaintiff's request to be removed from the cell with side-by-side beds. The allegations in the September 5, 2017 amended complaint indicate that the October 1, 2011 report was prepared after defendant Haring denied plaintiff's request to be removed from the cell with side-by-side beds.

In the September 5, 2017 amended complaint, plaintiff alleges that because of a medical disability, he was required to be housed in a lower bunk on a lower tier. (ECF No. 13 at 6.) Plaintiff alleges that in September 2011, he was moved to the cell with side-by-side beds based on a policy mandating that certain disabled inmates be housed in side-by-side beds. (Id. at 7.)

Plaintiff alleges that after he tried living in the cell with side-by-side beds for a few days, he expressed his concerns to defendant Haring. (Id. at 7.) Plaintiff told defendant Haring that living in that cell would have harmful effects on his mental disorder. (Id. at 7-8.) Plaintiff alleges that defendant Haring refused his request to be moved from the cell. (Id.) Plaintiff alleges that

---

[2] Plaintiff refers to the October 1, 2017 report in the September 5, 2017 operative amended complaint. (ECF No. 13 at 8.) The authenticity of this document is not questioned. Accordingly, the undersigned considers this report in evaluating defendants' motion to dismiss. Branch v. Tunnel, 14 F.3d 449, 453 (9th Cir. 1994).

because of defendant Haring's "action," plaintiff requested to be moved to administrative segregation ("ad seg"). (Id. at 8.) Plaintiff alleges that he was moved to ad seg. (Id.) However, the following day, the C Facility Captain discharged plaintiff back to C-yard.[3] (Id.) Plaintiff was placed in the CTC because he felt suicidal when he realized he was being placed back in a side-by-side cell with an openly gay inmate. (Id.) Plaintiff alleges that he was then housed in an alternative cell because there was no room in CTC. (Id. at 9.) "Thereafter on October 1, 2011, psychiatrist S. Glosse" prepared the memo discussed above.[4] (Id.) Plaintiff does not allege that defendant Haring was involved in any decision to house him in a cell with a side-by-side bed after October 1, 2011.

The allegations in the September 5, 2017 amended complaint demonstrate that defendant Haring did not have a recommendation from a mental health professional that plaintiff be removed from the cell with side-by-side beds when he denied plaintiff's request to be removed from the cell. Therefore, at the time defendant Haring denied plaintiff's request, the only information he had regarding the impact of the side-by-side beds on plaintiff's mental health came from plaintiff.[5] In addition, plaintiff alleges that he was moved to the cell with side-by-side beds based on a policy to house inmates with disabilities in those cells. Based on these circumstances, the undersigned finds that defendant Haring did not act with deliberate indifference when he denied plaintiff's request to be removed from the cell with side-by-side beds. Accordingly, defendants' motion to dismiss defendant Haring for failing to state a potentially colorable claim for relief should be granted.

////

---

[3] Plaintiff alleges that defendant Haring is a Facility Sergeant.

[4] In the September 5, 2017 amended complaint, plaintiff also mentions a September 30, 2011 report prepared by psychologist Bowerman. (ECF No. 13 at 9.) This report is attached to the September 1, 2017 amended complaint. (ECF No. 12 at 44.) In this report, Dr. Bowerman wrote that plaintiff complained of being in a cell with side-by-cell beds. (Id.) Dr. Bowerman did not recommend that plaintiff be removed from the side-by-side cell. (Id.)

[5] In the September 5, 2017 amended complaint, plaintiff does not allege what specifically he told defendant Haring about how living in the cell with side-by-side beds hurt his mental health.

The undersigned next addresses plaintiff's claim that defendants Hinrichs, Lynch and Virga denied his request for single cell status in 2013 without regard to plaintiff's mental health needs. Plaintiff alleges that these defendants denied his request for single cell status pursuant to a CDCR policy or practice which permitted prison officials to disregard the mental health status of inmates when considering whether inmates qualified for single cell status.

Regardless of whether plaintiff is claiming that these defendants failed to consider his mental health needs when considering his request for single cell status pursuant to a CDCR policy, a policy they created, or pursuant to no policy at all, plaintiff must still plead sufficient facts demonstrating that his failure to receive single cell housing violated his Eighth Amendment rights. For the reasons stated herein, the undersigned finds that plaintiff has not made that showing.

While plaintiff clearly suffered mental illness, he provides no specific information regarding why a single cell was important to his mental health, particularly in 2013. While plaintiff alleges that prison staff refused to accommodate his "mental health needs of special housing," (ECF No. 13 at 5), he alleges no specific facts supporting this claim.

The undersigned has reviewed the exhibits attached to the amended complaint filed September 1, 2017, and plaintiff's opposition to the pending motion. Only one exhibit in these pleadings contains a statement supporting plaintiff's claim that he required single cell status. This document is a medical record dated January 23, 2004, by Dr. Dias referring plaintiff to "IDTT for evaluation of single cell status." [6] (ECF No. 12 at 36.) This document does not demonstrate that plaintiff required single cell status in 2013 for mental health reasons, i.e., the year defendants allegedly denied his request for single cell status.

In his opposition, plaintiff claims that the October 1, 2011 note from the psychologist stating that he would recommend that plaintiff receive a change in cells also included a recommendation that plaintiff receive single cell housing. The undersigned has reviewed this

---

[6] Plaintiff refers to the January 23, 2004 report by Dr. Dias in the September 5, 2017 amended complaint. (ECF No. 13 at 4.) The authenticity of this document is not questioned. Accordingly, the undersigned considers this report in evaluating defendants' motion to dismiss. Branch v. Tunnel, 14 F.3d 449, 453 (9th Cir. 1994).

12

note and does not find that the psychologist who prepared the note recommended single cell housing. (ECF No. 12 at 46.) Instead, the psychologist responded to plaintiff's complaints regarding side-by-side beds.

Plaintiff also appear to claim that a September 30, 2011 note by psychologist Bowerman recommended single cell status. The undersigned has reviewed this note and finds no recommendation for plaintiff to receive single cell status. (Id. at 44.)

For the reasons discussed above, the undersigned finds that plaintiff has not plead sufficient facts from which it may be reasonably inferred that he required single cell status based on his mental illness. Accordingly, defendants' motion to dismiss Hinrichs, Lynch and Virga should be granted because plaintiff has failed to plead sufficient facts in support of his Eighth Amendment claim.

*Qualified Immunity*

Defendants move to dismiss the claims against defendants Hinrichs, Lynch, Virga and Haring on the grounds of qualified immunity.

The defense of qualified immunity protects "government officials...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists. First, the court asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. See id.

Because the undersigned finds that plaintiff has not stated potentially colorable Eighth Amendment claims against defendants, no further discussion of qualified immunity is warranted.

V. Motion to Amend

In the opposition to the motion to dismiss, plaintiff seeks leave to file an amended complaint alleging that defendants Virga, Lynch, Lynch, Macomber, CDCR and CDCR Secretary Kernan violated the Rehabilitation Act ("RA") and Americans with Disabilities Act ("ADA")

13

| | |
|---|---|
| 1 | when they failed to grant him single cell status based on his mental illness. |
| 2 | In the reply to the opposition, defendants argue that plaintiff alleges no conduct by these |
| 3 | defendants that violates the ADA or RA. Defendants also argued that plaintiff's claims are barred |
| 4 | by the Armstrong class action. Defendants cite Stewart v. Asuncion, 2016 WL 8735720 at *2-3 |
| 5 | (C.D. Cal. 2016), for the proposition that a prisoner's claims under the ADA and RA must be |
| 6 | vindicated in the Armstrong class action, not individual suits. |
| 7 | Plaintiff's motion to amend does not include a proposed amended complaint. As a |
| 8 | prisoner, plaintiff's pleadings are subject to evaluation by this court pursuant to the in forma |
| 9 | pauperis statute. See 28 U.S.C. § 1915A. Because plaintiff did not submit a proposed amended |
| 10 | complaint, the court is unable to evaluate it. For this reason, the motion to amend should be |
| 11 | denied. |
| 12 | Were plaintiff to file a proposed amended complaint containing his RA and ADA claims, |
| 13 | the undersigned would recommend denial of this motion to amend for the following reasons:[7] |
| 14 | "Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability." |
| 15 | Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no |
| 16 | qualified individual with a disability shall, by reason of such disability, be excluded from |
| 17 | participation in or be denied the benefits of the services, programs, or activities of a public entity, |
| 18 | or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the RA |
| 19 | provides that "no otherwise qualified individual with a disability ... shall, solely by reason of her |
| 20 | or his disability, be excluded from the participation in, be denied the benefits of, or be subjected |
| 21 | to discrimination under any program or activity receiving Federal financial assistance...." 29 |
| 22 | U.S.C. § 794. Title II of the ADA and the RA apply to inmates within state prisons. |
| 23 | Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998). |
| 24 | //// |

---

[7] Because plaintiff did not file a proposed amended complaint containing claims for relief, the undersigned cannot evaluate the impact of the Armstrong class action on his claims. See Hiser v. Franklin, 94 F.3d 1287, 1291 (9th Cir. 1996) (a class action suit seeking only declaratory and injunctive relief does not generally bar subsequent individual damage claims by class members); Pride v. Correia, 719 F.3d 1130, 1137 (9th Cir. 2013) (individual claim for injunctive relief not necessarily barred by related class action).

Any claim plaintiff might intend to make under the ADA or RA against defendants as individuals is not cognizable. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002). Moreover, in order to state a claim under the ADA and the RA, plaintiff must have been "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997). Plaintiff has alleged no such exclusion or denial based on the denial of his request for single cell status. Thus, plaintiff fails to state a claim under the ADA or the RA. See Villery v. California Dept. of Corrections and Rehabiliation, 2015 WL 4112324 at *8 (E.D. Cal. 2015) (denial of request for single cell status did not violate ADA or RA).

Moreover, "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010), overruled in part on other grounds by Castro v. County of Los Angeles, 833 F.3d 1060 (9thCir. 2016) (en banc). "[T]he same is true for section 504 of the [RA]." Figuiera ex rel. Castillo v. City of Sutter, 2015 WL 6449151 at *9 (E.D. Cal. 2015). "Inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld by reason of a disability." Marlor v. Madison Ct., Idaho, 50 Fed.Appx. 872, 873 (9th Cir. 2002). Plaintiff has not stated potentially colorable ADA and RA claims because his claim alleging denial of access to a single cell based on mental illness challenges a condition of confinement.

VI. Conclusion

For the following reasons, the undersigned recommends that defendants' motion to dismiss be granted without leave to amend.

The undersigned has spent considerable time screening plaintiff's complaints. On July 27, 2017, the undersigned issued an eighteen-page long order screening the original complaint. (ECF No. 9.) On January 26, 2018, the undersigned issued a ten-page long order screening the September 5, 2017 amended complaint. (ECF No. 17.) It does not appear that plaintiff can cure the pleading defects discussed above with respect to his claims against defendants Haring, Hinrich, Lynch and Virga. Accordingly, defendants' motion to dismiss should be granted without leave to amend.

On June 24, 2019, plaintiff filed a motion for disclosure pursuant to Federal Rule of Civil Procedure 26, docketed as a motion to compel. (ECF No. 49.) Because the undersigned recommends that defendants' motion to dismiss be granted, plaintiff's request for discovery, contained in the June 24, 2019 motion, is denied.

Accordingly, IT IS HEREBY ORDERED that:

1. The May 10, 2019 findings and recommendations (ECF No. 45) are vacated;

2. Defendants Curren, Wright and Wolcott are dismissed pursuant to Federal Rule of Civil Procedure 41(a);

3. Plaintiff's motion to compel (ECF No. 49) is denied;

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion to amend (ECF No. 47) be denied;

2. Defendants' motion to dismiss (ECF No. 41) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 3, 2019

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Cole851.mtd