1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT COLEMAN,                          No.  2: 17-cv-0851 KJM KJN P

12              Plaintiff,

13        v.                                   ORDER

14   T. VIRGA, et al.,

15              Defendants.

16

17   I.        Introduction

18        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is plaintiff's motion to compel.  (ECF No. 68.)

20   For the reasons stated herein, plaintiff's motion to compel is granted in part and denied in part.

21   II.       Plaintiff's Claims

22        To put plaintiff's motion to compel in context, the undersigned sets forth plaintiff's

23   claims.

24        This action proceeds on the amended complaint filed September 5, 2017, as to defendants

25   Haring, Hinrichs, Lynch and Virga.  (ECF No. 13.)

26        Defendant Virga is the Warden of California State Prison-Sacramento ("CSP-Sac"), where

27   the alleged deprivations occurred.  (Id. at 7.)  Defendant Haring is a Facility Sergeant.  (Id. at 7.)

28   The September 5, 2017 amended complaint does not describe the duties of defendants Hinrich

and Lynch.  However, exhibits attached to the September 1, 2017 amended complaint, to which

plaintiff refers, indicate that defendant Hinrichs is a Correctional Counselor and defendant Lynch

is the Appeals Coordinator,

*Defendants Hinrich, Lynch and Virga*

Plaintiff alleges that he requires single cell housing based on mental illness.  (Id. at 2-3.)

Plaintiff alleges that in 2004, prison psychologist Dias requested that plaintiff receive single cell

status for mental health reasons.  (Id. at 4.)  Prison officials at California State Prison-Centinella

denied this request.  (Id.)  Plaintiff alleges that the failure of prison staff to accommodate his need

for special housing based on his mental health contributed to the deterioration of his mental

health.  (Id.)  As a result of the deterioration of his mental health, plaintiff was placed in the Crisis

Treatment Center ("CTC") of various prisons for suicidal ideation/suicide attempts and was

involuntarily medicated for three years.  (Id. at 5.)

Plaintiff alleges that in 2013, defendants Hinrich, Lynch and Virga denied his requests for

single cell housing on the grounds that plaintiff did not have a history of in-cell physical or sexual

violence against a cellmate.  (Id. at 2-3.)  In other words, defendants Hinrich, Lynch and Virga

denied plaintiff's request for single cell housing without regard to plaintiff's mental health needs.

Plaintiff alleges that these defendants failed to consider his mental health needs pursuant to a

"practice or custom."  (Id. at 13.)  Plaintiff appears to claim that this was a policy or practice of

the California Department of Corrections and Rehabilitation ("CDCR"), because he alleges that in

2016, CDCR Secretary Kernan issued a memorandum clarifying that prison staff were to

consider, among other things, inmate mental health when considering whether to grant single cell

status.  (Id. at 3.)

*Defendant Haring*

Plaintiff alleges that in September 2011, he was housed in a cell containing side-by-side

beds pursuant to a policy carried out by defendant Virga requiring certain disabled inmates to be

housed only in cells with side-by-side beds.  (Id. at 7.)  Plaintiff alleges that side-by-side beds

aggravate his mental illness.  (Id. at 5.)  Plaintiff alleges that he expressed his housing concerns to

defendant Haring.  (Id. at 7.)  Plaintiff alleges that defendant Haring refused to move him from

1  the cell even after plaintiff warned him that the housing arrangement would be harmful to his

2  mental disorder.  (Id. at 7-8.)

3    III.    Motion to Compel

4      A. Legal Standard

5      The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is broad.

6  Discovery may be obtained as to "any nonprivileged matter that is relevant to any party's claim or

7  defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Information within

8  this scope of discovery need not be admissible in evidence to be discoverable."  Id.  The court,

9  however, may limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained

10  from some other source that is more convenient, less burdensome, or less expensive;" or if the

11  party who seeks discovery "has had ample opportunity to obtain the information by discovery;"

12  or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P.

13  26(b)(2)(C).

14     "The party seeking to compel discovery has the burden of establishing that its request

15  satisfies the relevancy requirements of Rule 26(b)(1)."  Bryant v. Ochoa, 2009 WL 1390794 at *1

16  (S.D. Cal. May 14, 2009) (citations omitted).  "Thereafter, the party opposing discovery has the

17  burden of showing that the discovery should be prohibited, and the burden of clarifying,

18  explaining or supporting its objections."  Id.  The opposing party "has the burden to show that

19  discovery should not be allowed…"  DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal.

20  2002).

21      B.  Meet and Confer

22      Defendants argue that the motion to compel should be denied because plaintiff failed to

23  meet and confer as required by Federal Rule of Civil Procedure 37.  While it is true that the

24  requirement outlined in Rule 37(a) has not been explicitly excused, and the court encourages

25  parties to attempt to resolve disputes prior to seeking court intervention, because of plaintiff's

26  status as a pro se prisoner, it will not be enforced here and will not provide grounds for denying

27  the motion.

28  ////

C.   Identification of At-Issue Discovery Responses

In the motion to compel, plaintiff challenges all defendants' responses to his interrogatories, requests for admissions and requests for production of documents.  Defendants argue that the motion to compel should be denied because plaintiff failed to specify with respect to each interrogatory or request why the response was insufficient and/or objections provided by defendant were not sufficient.

The party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of the motion to compel, (2) which of the responses are disputed, (3) why the party believes the response is deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is relevant to the prosecution of this action.  McCoy v. Ramirez, 2016 WL 3196738, at *1 (E.D. Cal. June 9, 2016); Ellis v. Cambra, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008).

Defendants are correct that plaintiff failed to provide reasons why defendants' responses to each of his discovery requests were deficient.  Accordingly, plaintiff did not meet his burden as to those responses which he failed to specifically address in the motion to compel.  However, the motion to compel specifically identifies and discusses several responses to discovery requests. Plaintiff has met his burden as to those requests, and they are discussed herein.

D.   Request for Admissions

*Legal Standard*

A party may not avoid responding to a request for admission "based on an overly-technical reading of the request."  U.S. ex rel. Englund v. Los Angeles County, 235 F.R.D. 675, 684 (E.D. Cal. 2006); Marchand v. Mercy Medical Center, 22 F.3d 933, 936 (9th Cir. 1994) (parties responding to requests for admission "should focus on the goal of the Rules, full and efficient discovery, not evasion and word play").  "[I]t is not ground for objection that the request is 'ambiguous' unless so ambiguous that the responding party cannot, in good faith, frame an intelligent reply.  Parties should 'admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted.'"  Englund, 235 F.R.D. at 685 (quoting Marchand, 22 F.3d at 938).  "For example, a party who is unable to agree with the exact wording

4

1    of the request for admission should agree to an alternate wording or stipulation."  Englund, 235

2    F.R.D. at 684 (citing Marchand, 22 F.3d at 938); see also Eichler v. Tilton, 2010 WL 3734023 at

3    *6 (E.D. Cal. 2010) (approving responding party's alternate phrasing of admission where request

4    was "vague and confusing").

5              *Requests for Admissions to Defendant Virga*

6              Plaintiff challenges defendant Virga's response to request for admission no. 1:

7              Admit that in 2013, you were as SAC Warden provided with a
              written notification of Plaintiff's CDC Form 7367, Certification
8              Hearing Notice, when SAC mental health staff was seeking a order
              to Involuntary Medicate him.
9

10   (ECF No. 68 at 48.)

11             Defendant Virga responded,

12             Defendant objects to this request as incomplete.  The referenced
              document has not been provided.  The request is also ambiguous as
13             to whether Plaintiff is seeking an admission that defendant received
              the referenced form or was provided "written notification" of such
14             form.  The request is also vague as to time by failing to specify a date
              certain in 2013 that Plaintiff contends defendant received something.
15             This request is compound in seeking the admission of multiple facts.
              U.S. ex rel. Englund v. Los Angeles Cty., 235 F.R.D. 675, 684 (E.D.
16             Cal. 2006).

17   (Id.)

18             The undersigned does not understand defendant's objection that plaintiff failed to provide

19   the referenced document.  Federal Rule of Civil Procedure 36(a)(2), addressing requests for

20   admissions, provides that a "request to admit the genuineness of a document must be

21   accompanied by a copy of the document…"  Rule 36 does not otherwise require a request for

22   admission to include referenced documents.  Request no. 1 does not ask defendant Virga to admit

23   the genuineness of any document.  Accordingly, defendant's objection that plaintiff failed to

24   provide the referenced document is without merit.

25             Defendants argue that request no. 1 is vague and ambiguous because it is not clear

26   whether plaintiff is asking if defendant Virga received the CDC Form 7367 in 2013 or if he

27   received written notification of the form.  It is reasonably clear to the undersigned that request no.

28   1 asks defendant Virga to admit that he received the CDC Form 7367 during 2013.  In the motion

1  to compel, plaintiff clarifies that he is asking if defendant Virga, himself, was provided with the

2  CDC Form 7367 between January 1, 2013, and August 13, 2013.  (Id. at 2.)  This request is

3  neither ambiguous nor vague.  Accordingly, defendant Virga shall provide plaintiff with an

4  amended response to this request, as clarified above, within thirty days.  Englund, 235 F.R.D. at

5  684-85.

6         Defendants also object that request no. 1 to defendant Virga is compound.  In the

7  opposition to the motion to compel, defendants argue that request no. 1 seeks admission of

8  multiple facts, i.e, that defendant was provided with a form and/or written notification of the

9  form, and that SAC mental health was seeking to involuntarily medicate plaintiff.  The

10  undersigned does not read request no. 1 so broadly.  It is reasonably clear that request no. 1 only

11  seeks information regarding whether defendant Virga received the form 7367, and not whether

12  SAC mental health sought to involuntarily medicate plaintiff.  See Clay v. Cytosport, Inc., 2016

13  WL 11523590, at *5 (S.D. Cal. Aug. 16, 2016) ("To the extent the requests are compound,

14  Defendant can explain the scope of its admission or denial in its responses.")

15        Plaintiff challenges defendant Virga's response to request for admission no. 2:

16        Admit that because of the harmful acts exhibit by Plaintiff who
       refused on several occasions to eat or drink water for several days in
17       which SAC's mental health staff made you aware of, per prison
       policy it deem him gravely disabled.
18

19  (ECF No. 68 at at 48.)

20        Defendant Virga responded to request no. 2 as follows:

21        Defendant objects to this request as compound in seeking the
       admission of multiple facts.  U.S. ex rel. Englund v. Los Angeles
22       Cty., 235 F.R.D. 675, 684 (E.D. Cal. 2006).

23        The request is also vague as to time in referencing "several
       occasions" and "several days" and ambiguous with respect to the
24       terms "harmful acts exhibit by Plaintiff," "SAC's mental health
       staff," "per prison policy" and "deem him as being 'gravely
25       disabled.'"  Defendant further objects that this request [is] not
       proportional to the needs of this case.  Fed. R. Civ. P. 26(b)(1).
26       Whether plaintiff refused to eat at some point in time does not appear
       to be related to the claims in his operative complaint.  The request is
27       also improper because it calls for a legal conclusion, i.e., that plaintiff
       was "gravely disabled."  Garcia v. Clark, 2012 WL 1232315 *11
28       (E.D. Cal. April 12, 2012).

6

1    (<u>Id.</u> at 48-49.)

2         In the motion to compel, plaintiff alleges that in request for admission no. 2, he is asking

3 defendant Virga to admit that at the time of plaintiff's request for single cell status and exclusion

4 from cells that contained side by side beds, plaintiff met the definition of "gravely disabled"

5 contained in DOM 91090.  However, it is not reasonably clear from request no. 2 that plaintiff is

6 seeking this information.  Defendant's objections that request no. 2 is vague and ambiguous have

7 merit.  Unlike request for admission no. 1, the undersigned finds that defendants could not, in

8 good faith, frame an intelligent reply to request no. 2.  Accordingly, plaintiff's motion to compel

9 as to request for admission no. 2 addressed to defendant Virga is denied.

10         *Request for Admissions to Defendant Hinrich*

11         Plaintiff challenges defendant Hinrich's response to request for admission no. 1:

12           Admit that as the First Level Reviewing (FLR) officer to plaintiff's
grievance Log No. SAC-S-13-02151, dated August 6, 2013, you per

13           the investigation concluded that Dr. Grosse's October 1, 2011 CDCR
7230 MH Physician note attached, did in fact involved discussions

14           pertaining to single cell.

15    (<u>Id.</u> 68 at 45.)

16         Defendant Hinrich responded to request no. 1 as follows:

17           Defendant objects to this request as compound and unintelligible.  It
is unclear what plaintiff is seeking defendant to admit.  The request

18           references several documents, an investigation and "discussions" and
it is not clear what about any of these things plaintiff is asking

19           defendant to admit or deny.  Accordingly, the request is improper.
<u>U.S. ex rel. Englund v. Los Angeles Cty.</u>, 235 F.R.D. 675, 684 (E.D.

20           Cal. 2006).

21    (<u>Id.</u>)

22         Plaintiff attached a copy of the first level grievance no. 13-02151, denied by defendant

23 Hinrich, to the amended complaint filed September 1, 2017.  (ECF No. 12 at 28-29.)  In this

24 grievance, plaintiff sought single cell status "based on a medical standpoint."  (<u>Id.</u>)  In the

25 response, defendant Hinrich wrote, "The one document (CDCR 7230 MH) only states a

26 discussion you had with a clinician wherein you requested single cell and exclusion from the cells

27 with side by side beds."  (<u>Id.</u> at 28.)

28    ////

1        It is reasonably clear that in request no. 1, plaintiff is asking defendant Hinrich to admit

2    that the CDCR 7230 MH document defendant Hinrich discussed (and apparently reviewed) in the

3    response to plaintiff's grievance stated that plaintiff had discussions with mental health staff

4    regarding plaintiff's need for single cell status.  Defendant Hinrich is directed to provide plaintiff

5    with an amended response to this request.  Englund, 235 F.R.D. at 684-85.

6        Plaintiff challenges defendant Hinrich's response to request for admission no. 2:

7            Admit that all inquiries into the mental health status of plaintiff when
             filing of grievance Log No. SAC-S-13-02151 was made, SAC mental
8            health staff made you aware that a Administrative Law Judge (ALJ)
             had recently deem him as posing a "danger to himself" granting their
9            request for a PC § 2602 order.  This is in concurrent with the CDCR
             7363 attached.
10

11   (ECF No. 68 at 45.)

12       Defendant Hinrich responded to request for admission no. 2 as follows:

13           Defendant objects to this request as compound.  It refers to multiple
             events or occurrences and it is not clear what fact plaintiff is
14           requesting the defendant admit or deny.  The request is incomplete
             in that the referenced "CDCR 7363" was not attached to the request.
15           The request is also vague as to time as to when certain unspecified
             "inquiries" were made, when an ALJ "deemed" plaintiff a "danger
16           to himself," what "mental health staff" plaintiff is referring to, when
             defendant was allegedly "made aware" of something, and the term
17           "filing of grievance log no. SAC S-13-02151."  Accordingly, the
             request is improper.  U.S. ex rel. Englund v. Los Angeles Cty., 235
18           F.R.D. 675, 684 (E.D. Cal. 2006).

19   (Id. at 45-46.)

20       The understand does not understand defendants' objection that plaintiff failed to attach the

21   referenced CDCR 7363.  It is reasonably clear that in request no. 2, plaintiff is asking defendant

22   Hinrich to admit that when he responded to plaintiff's grievance no. 13-02151, he knew that an

23   ALJ had recently ordered that plaintiff could be involuntarily medicated with psychiatric

24   medication, pursuant to California Penal Code § 2602.  Defendant Hinrich shall provide an

25   amended response to this request within thirty days.  Englund, 235 F.R.D. at 684-85.

26   ////

27   ////

28   ////

8

1

     E.   <u>Interrogatories</u>

2

     *Legal Standard*

3

     Parties are obligated to respond to interrogatories to the fullest extent possible under oath,

4

Fed. R. Civ. P. 33(b)(3), and any objections must be stated with specificity, Fed. R. Civ. P.

5

33(b)(4); <u>Davis v. Fendler</u>, 650 F.2d 1154, 1160 (9th Cir. 1981) ("objections should be plain

6

enough and specific enough so that the court can understand in what way the interrogatories are

7

alleged to be objectionable").  A responding party is typically not required to conduct extensive

8

research in order to answer an interrogatory, but reasonable efforts to respond must be

9

undertaken.  <u>L.H. v. Schwarzenegger</u>, 2007 WL 2781132, *2 (E.D. Cal. Sep. 21, 2007).  Further,

10

the responding party has a duty to supplement any responses if the information sought is later

11

obtained or the response provided needs correction.  Fed. R. Civ. P. 26(e)(1)(A).

12

     *Interrogatories Nos. 3, 15 to Defendant Virga*

13

     Plaintiff objects to defendant Virga's response to interrogatory no. 3 which asked, "In

14

2013, were you aware of the directives stipulated in then Secretary of CDCR Kernan's 2016 IHA

15

memo?"  (ECF No. 68 at 30.)

16

     Defendant Virga objected to interrogatory no. 3:

17

18

19

20

21

          Defendant objects to this interrogatory as vague and ambiguous with respect to the terms "directives" and "2016 IHA memo."  Defendant further objects on the grounds that the interrogatory calls for speculation.  Subject to and without waiving the foregoing objections, Defendant responds no, he was not aware in 2013 of a memorandum that presumably did not exist until 2016, as he retired from the California Department of Corrections and Rehabilitation (CDCR) over two years before the memorandum was issued.

22

(<u>Id.</u>)

23

     The undersigned agrees that interrogatory no. 3 is vague and ambiguous as to the term

24

"directives."  In the motion to compel, plaintiff alleges that by "directives," he is referring to

25

various sections of the DOM, i.e., Department Operations Manual.  (<u>Id.</u> at 5.)  However, this is

26

not clear in interrogatory no. 3.  Accordingly, defendant Virga is not required to provide a further

27

response to interrogatory no. 3 and the motion to compel is denied as to this request.

28

////

Interrogatory no. 15 addressed to defendant Virga asked, "Did SAC receive a large number of HIV positive inmates from CSP-Corcoran in 2008?"  (Id. at 35.)

Defendant objected that interrogatory no. 15 sought privileged and confidential third-party private health information and sought to invade the privacy rights of other inmates, including, but not limited to, the privacy of medical information protected under federal law.  (Id.)  Defendant also objected that the interrogatory sought information that was not relevant to a claim or defense in this action, or proportional to the needs of this case.  (Id.)  Defendant objected that the relevant allegations in the operative complaint concern events in 2011 and, possibly, 2013 and there is no allegation plaintiff contracted HIV or is even HIV positive.  (Id.)  Defendant also objected that request no. 15 was vague and ambiguous as to the term "large number of positive HIV inmates from CSP-Corcoran."  (Id.)

Defendants' objection that request no. 15 sought privileged and confidential information is not well supported.  While defendants generally argue that the information sought would violate the privacy rights of other inmates, defendants cite no legal authority in support of this claim, and the request does not ask about any particular individual's medical condition.  For this reason, defendants have not demonstrated that this request should be denied based on privilege.

Turning to the issue of relevancy, in the motion to compel plaintiff alleges that in the operative amended complaint, he alleged that defendant Haring tried to compel him to cell with an openly gay man.  (Id. at 6.)  Plaintiff alleges that his (plaintiff's) fear of contracting HIV was well documented by a mental health clinician.  (Id.)

Assuming that plaintiff alleged that his mental health issues precluded him from being housed in a side-by-side cell with a gay inmate, the alleged violations by defendant Haring occurred in September 2011.[1]  Whether SAC received a large number of HIV positive inmates

---

[1] In the amended complaint, plaintiff alleges that in September 2011, he was moved to a building that contained side-by-side beds.  (ECF No. 13 at 7.)  Plaintiff expressed his concerns to defendant Haring about being housed in building with side-by-side beds "based on mental health reasons."  (Id.)  Defendant Haring "refused to accommodate" plaintiff's needs.  (Id.)  Plaintiff requested to be moved to administrative segregation.  (Id. at 8.)  Plaintiff was later taken to administrative segregation.  (Id.)  The following day, plaintiff was escorted back to the building with side-by-side beds.  (Id.)  The escorting officer told plaintiff that he would share a cell with

1  from CSP-Corcoran in 2008 is not sufficiently relevant to this claim. Accordingly, the motion to

2  compel as to interrogatory no. 15 addressed to defendant Virga is denied.

3        *Interrogatories Nos. 6, 7, 13 to Defendant Haring*

4        Interrogatory no. 6 asked defendant Haring, "When denying plaintiff on September 22,

5  2011 request to be excluded from cells with side-by-side beds occupied with another inmate, were

6  you at any time, as SAC's facility C Sergeant aware of the directives stipulated in CDCR

7  Secretary Scott Kernan's 2016 IHA memo?" (Id. at 18.) Interrogatory no. 7 asked, "If your

8  answer to No. 6 is no. Can you explain why?" (Id. at 19.)

9        Defendant Haring objected to interrogatory no. 6 as vague with respect to the terms

10  "September 2011 request be excluded from cells with side-by-side beds occupied with another

11  inmate," "directives" and "2016 IHA memo." (Id.) Without waiving objections, defendant

12  responded that he does not recall the referenced "request" from plaintiff. (Id.) "Further,

13  regardless of the referenced request by plaintiff, defendant responds no." (Id.)

14        The undersigned agrees that interrogatory no. 6 is vague and ambiguous as to the term

15  "directives." In the motion to compel, plaintiff alleges that by "directives," he is referring to

16  various sections of the DOM, i.e., Department Operations Manual. (Id. at 5.) However, this is

17  not clear in interrogatory no. 6. For these reasons, defendant Haring is not required to provide a

18  further response to interrogatory nos. 6 and 7 and the motion to compel is denied as to these

19  requests.

20        Interrogatory no. 13 asked defendant Haring, "Did a inmate Christopher Jackson, J43666,

21  while incarcerated at SAC facility C, filed grievance against you for the same practice of placing

22  him in a side-by-side bed, because of his medical disability? If so, did you order, approve, or

23  acquiesce to the cell assignment of inmate Jackson in the same cell with plaintiff in and/or about

24  2013?" (Id. at 21.)

25  ////

26

27  ────────────────
inmate Jefferies. (Id.) Plaintiff refused because inmate Jefferies is openly gay. (Id.) "Plaintiff
knew that defendant Haring had something to do with this cell arrangement…" (Id.) Plaintiff felt

28  suicidal and was placed in CTC. (Id.)

In relevant part, defendants objected that the grievance sought information that was not relevant or proportional to the needs of this case.  (Id.)  Defendants objected, "[a] grievance may have been submitted by another inmate in 2013, or who were plaintiff's cell partners in 2013, have no relation to the allegations against defendant Haring which concern events in 2011."  (Id.)

Plaintiff has not adequately explained the relevance of the grievance allegedly filed by inmate Jackson and defendant Haring's alleged decision to house plaintiff with inmate Jackson in 2013.  For these reasons, the motion to compel is denied as to interrogatory no. 13.

*Interrogatories Nos. 1, 2 to Defendant Hinrich*

Interrogatory no. 1 asked defendant Hinrich, "In 2013, were you aware of the directives stipulated in CDCR Secretary Scott Kernan's 2016 IHA memo?"  (Id. at 25.)  Defendant Hinrich objected to interrogatory no. 1 as vague and ambiguous with respect to the terms "directives" and "2016 memo."  (Id.)  Without waiving objections, defendant responded "no."  (Id.)

Interrogatory no. 2 asked, "If your answer to question no. 1 is no, can you explain why not?"  (Id.)  In response, defendant incorporated his objections to interrogatory no. 1.  (Id.)  Without waiving objection, defendant Hinrich responded that in 2013 he was not aware of a memorandum that did not exist until 2016.  (Id.)  In addition, defendant Hinrich retired from CDCR on February 11, 2014.  (Id.)

The undersigned agrees that interrogatory no. 1 is vague and ambiguous as to the term "directives."  In the motion to compel, plaintiff alleges that by "directives," he is referring to various sections of the DOM, i.e., Department Operations Manual.  (Id. at 5.)  However, this is not clear in interrogatory no. 1.  For these reasons, defendant Hinrich is not required to provide a further response to interrogatory nos. 1 and 2 and the motion to compel is denied as to these requests.

*Interrogatory No. 4 to Defendant Lynch*

Interrogatory no. 4 asked defendant Lynch, "In 2013, were you aware of the directives stipulated in CDCR Secretary Scott Kernan's 2016 IHA memo?"  (Id. at 41.)  Defendant Lynch objected to interrogatory no. 4 as vague and ambiguous with respect to the terms directives and "2016 IHA memo."  (Id.)  Without waiving objections, defendant Lynch responded no, he was

1    not aware in 2013 of a memorandum that did not exist until 2016.  (Id.)

2            The undersigned agrees that interrogatory no. 4 is vague and ambiguous as to the term

3    "directives."  In the motion to compel, plaintiff alleges that by "directives," he is referring to

4    various sections of the DOM, i.e., Department Operations Manual.  (Id. at 5.)  However, this is

5    not clear in interrogatory no. 4.  For these reasons, defendant Lynch is not required to provide a

6    further response to interrogatory no. 4 and the motion to compel is denied as to this request.

7            F.   Request for Production of Documents

8                 *Legal Standard*

9            In responding to discovery requests, defendants must produce documents or other tangible

10   things which are in their "possession, custody or control."  Fed. R. Civ. P. 34(a).  Responses must

11   either state that inspection and related activities will be permitted as requested, or state an

12   objection, including the reasons.  Fed. R. Civ. P. 34(b)(2)(B).

13               *Request Nos. 1, 3 and 4*

14           Request for production no. 1 asked for,

15               The GA Inmate Transfer Form filed by SAC Facility "C"
16               Lieutenant/Sergeant or higher official.  This is for the dates of Sept.
                 22, 2011, Sept. 29, 2011, Oct. 3, 2011, Feb. 7, 2013 and Jan. 29,
17               2016.  This is of Plaintiff Robert Coleman's bed moves.  The form
                 should contain the name and signature of the personnel/official who
18               requested/approved of such transfer of housing.

19   (Id. at 51.)

20           Request no. 3 asked for,

21               All Bed Vacancy Reports for the dates of:  Sept. 22, 2011, Sept. 29,
22               2011, Oct. 3, 2011, Feb. 7, 2013 and Jan. 29, 2016.  This is for facility
                 "C."

23   (Id. at 52.)

24           Request no. 4 asked for,

25               All Daily Record of Housing Assignment changes for the dates of:
                 Sept. 22, 2011, Sept. 29, 2011, Oct. 3, 2011, Feb. 7, 2013 and Jan.
26               29, 2016.  This is for Facility 'C.'  Which should on a CDC form
                 117.
27

28   (Id. at 52.)

                                                     13

Defendants objected to request nos. 1, 3 and 4 as unduly broad and overly burdensome. (Id. at 51, 52.)  After a diligent search, it was learned that the forms requested in request nos. 1, 3 and 4 may be in archived locations and that a search of these locations would require redirection of staff away from their regular duties at CSP-Sac.  (Id. at 51, 52.)  Thus, defendants objected, request nos. 1, 3 and 4 were not proportional to the needs of the case.  (Id. 51, 52.)

Defendants also objected that request nos. 3 and 4 sought confidential information and information that if released to plaintiff could jeopardize the safety of staff and inmates and the security of the institution.  (Id. at 52.)

As for request no. 1, without waiving objections, defendants produced documents pertaining to February 7, 2013 and January 29, 2016, DEF 001-002.  (Id. at 51.)

In support of the opposition, defendants provided the declaration of CSP-Sac Litigation Coordinator Kraemer.  (ECF No. 71-2.)  In relevant part, Litigation Coordinator Kraemer states,

> 3.  As part of my duties as Litigation Coordinator, I reviewed Plaintiff's Request for Production of Documents, Set One.  After reviewing them, I contacted via email and/or telephone the Central Services Captain's Officer, the Watch Commander, Central Control Sergeant, an Investigative Services Unit who used to work in Central Control and the C Facility Sergeant in an attempt to determine whether the documents Plaintiff was seeking existed or could be located.
>
> 4.  In response to my inquiries, I learned that the documents responsive to Plaintiff's requests numbers 1, 3 and 4 may be in archived locations, this includes GA 154 forms for 2011.  These forms were supplanted in 2012 and the computerized replacement for this form was produced for the 2013 and 2016 dates requested.  I was advised that to conduct a search of the archived locations would require the redirection of a correctional officer or correctional sergeant from their regularly assigned duties to search through several dozen boxes located in an area about two miles from their assigned facilities and possible locations in the administration building.  For a staff member to conduct such a search, it is estimated it would take about four to five days to search through several dozen boxes in the archived location.  In addition, in the event of an alarm due to a medical emergency or incident, staff would have to interrupt the search and respond.  Thus, the search could take longer than four or five days.  I do not have the time to spend four or five days searching for the records due to the daily deadlines in the numerous cases that my office handles.
>
> 5. Assuming the "bed vacancy reports" requested in request number three could be located, I am informed that those reports would not indicate the type of cell (i.e. side by side versus bunk bed).

14

1  (Id. at 1-2.)

2       Defendants' objection that requests nos. 3 and 4 should be denied because they seek

3  confidential information is not well supported.  Defendants cite no legal authority in support of

4  this argument.  Defendants also apparently failed to provide a privilege log to plaintiff regarding

5  their assertion that the documents sought in requests nos. 3 and 4 are privileged.  For these

6  reasons, the undersigned finds that defendants have not shown that request nos. 3 and 4 should be

7  denied based on privilege.

8       The undersigned now turns to the relevancy of the information sought in request nos. 1, 3

9  and 4.  Request nos. 3 and 4 seek Bed Vacancy Reports and records of Housing Assignment

10  changes for all inmates in Facility C on the dates requested.  Plaintiff has not demonstrated that

11  information regarding bed vacancy and housing assignments for all inmates housed on Facility C

12  on the dates requested is relevant to this action.  In the motion to compel, plaintiff argues that the

13  information sought in request no. 3 would reveal that there were available bunk bed cells for

14  plaintiff.  However, Litigation Coordinator Kraemer states that the documents sought in request

15  no. 3 would not reveal this information.

16       The undersigned finds that the documents sought in request nos. 3 and 4 are not

17  proportional to the needs of the case considering the burden on defendants to produce such

18  documents, as described by Litigation Coordinator Kraemer's declaration.  See Fed. R. Civ. P.

19  26(b) (discovery must be proportional to the needs of the case considering the importance of the

20  issues at stake, the amount in controversy, the parties relative access to relevant information, the

21  parties' resources, the importance of the discovery in resolving the issues, and whether the burden

22  or expense of the proposed discovery outweighs its likely benefit.)  Accordingly, the motion to

23  compel as to request nos. 3 and 4 is denied.

24       The information sought in request no. 1, i.e., the transfer forms showing plaintiff's bed

25  moves on the requested dates, may lead to the relevant evidence.  As discussed above, defendants

26  did not produce the documents for the three dates in 2011 because of the burden in locating them,

27  as described in Litigation Coordinator Kraemer's declaration.  After considering the record, the

28  undersigned finds that plaintiff's need for these documents does not outweigh the burden on

1    defendants in possibly locating these documents.  Fed. R. Civ. P. 26(b).  Accordingly, plaintiff's

2    motion to compel as to request no. 1 is denied.

3        *Request Nos. 2 and 5*

4        Request no. 2 asked for,

5            All inmate Daily Movement sheet for the dates of Sept. 22, 2011,
             Sept. 29, 2011, Oct. 3, 2011, Feb. 7, 2013 and Jan. 29, 2016.  This is
6            for facility 'C.'

7    (ECF No. 68 at 51.)

8        Request no. 5 asked for,

9            All Housing Roster reports for the dates of:  Sept. 22, 2011, Sept. 29,
             2011 Oct. 3, 2011, Feb. 7, 2013 and Jan. 29, 2011, which should
10           display the total occupied beds by housing units, the number of
             vacant beds in each housing unit and the inmate's ethnicity.  This is
11           for 'Facility C.'

12   (Id. at 53.)

13       Defendants objected that request nos. 2 and 5 were unduly broad and overly burdensome.

14   (Id. at 51, 53.)  Defendants objected that the movement for inmates in facility C on the specified

15   dates (request no. 2) did not appear likely to lead to the discovery of admissible evidence and

16   thus, was not proportional to the needs of this case.  (Id. at 51.)  Defendants objected that the

17   housing roster for inmates in facility C on the specified dates, nor the "ethnicity" of other inmates

18   (request no. 5) did not appear likely to lead to the discovery of admissible evidence and thus, was

19   not proportional to the needs of the case.  (Id.)

20       Defendants also objected that request nos. 2 and 5 sought confidential or private

21   information for other inmates and information that if released could jeopardize the safety of staff

22   and inmates and the security of the institution.  (Id. at 51, 53.)

23       Without waiving objections, in response to request nos. 2 and 5, defendants provided

24   plaintiff with Bed History Reports, redacted, showing plaintiff's information for the referenced

25   dates, DEF 003-029.  (Id. at 52. 53.)

26       Defendants' objection that the documents sought in request nos. 2 and 5 are confidential is

27   not well supported.  While Litigation Coordinator Kraemer addresses why the information sought

28   in these requests are considered confidential under the California Code of Regulations, defendants

16

1    cite no legal authority in support of their claim that these documents are privileged.  Defendants

2    also fail to provide a privilege log.  Accordingly, defendants have not shown that the documents

3    sought in request nos. 2 and 5 should be denied based on privilege.

4           Turning to the issue of relevance, neither plaintiff nor defendants explain the relationship

5    between the Daily Movement Sheets and Housing Roster Reports sought by plaintiff in request

6    nos. 2 and 5 and the Bed History Reports provided by defendants.  However, for the reasons

7    stated herein, the undersigned finds that plaintiff has not meet his burden of demonstrating that

8    the documents sought in request nos. 2 are relevant to this action.

9           In the motion to compel, plaintiff generally argues that the documents sought in request

10   no. 2 are relevant.  (Id. at 9.)  However, plaintiff does not specifically explain the relevancy of

11   these documents. It is unclear to the undersigned how the Daily Movement Sheets, apparently

12   reflecting the movement of all inmates on Facility C on the dates requested, are relevant to this

13   action.  Because the request appears overbroad, and plaintiff has not demonstrated the relevance

14   of this request, plaintiff's motion to compel with respect to request no. 2 is denied.

15          In the motion to compel, plaintiff argues that the documents sought in request no. 5 are

16   relevant because they would include the names of personnel involved.  (Id. at 9.)  Litigation

17   Coordinator Kraemer states that the redacted information in the bed history documents provided

18   in response to request no. 5 would not show the personnel involved in any particular bed move.

19   (ECF No. 71-2 at 3.)

20          Regarding request no. 5, Litigation Coordinator Kraemer also states,

21          In addition, regarding request number 5, which sought documents
             showing "total beds occupied by housing unit, the number of vacant
22          beds in each housing unit and the inmate's ethnicity," I was informed
             that such documents do not exist or were not retained for the 2011
23          and 2013 dates.  Coleman's bed history for the dates requested was
             therefore produced.  However, the bed history report for February 7,
24          2013 does not list inmate Coleman.

25   (Id.)

26          While the personnel involved in bed moves may not be shown in the Bed History Reports

27   provided by defendants, as represented by Litigation Coordinator Kraemer, it is not clear if the

28   personnel involved would be shown in the Housing Roster reports sought by plaintiff in request

                                                   17

no. 5.  In addition, it is not clear to the undersigned if defendants are claiming that the Housing

Roster reports sought in request no. 5 do not exist or, if they do exist, they do not contain the

information plaintiff claims would be in these reports.  Accordingly, defendants are directed to

provide a supplemental response to request no. 5 addressing these issues.

Request No. 6

Request no. 6 asked for,

> The CDC 1860, Post Order Acknowledgement, form which verifies
> that 'the assign staff member has read and understand the post order
> for their post" on these dates:  Sept. 22, 2011, Sept. 29, 2011, Oct. 3,
> 2011, Feb. 7, 2013 and Jan. 29, 2016 for SAC facility "C" program
> office 2nd watch.

(ECF No. 68 at 53.)

Defendants objected that request no. 6 was unduly broad and overly burdensome.  (Id.)

"The post order acknowledgements for staff in c-facility on second watch does not appear likely

to lead to the discovery of admissible evidence and, thus is not proportional to the needs of this

case.  Fed. R. Civ. P. 26(b)(1)."  (Id.)

Without waiving objections, defendants responded that after a diligent and reasonable

search on their behalf, no documents were located in response to this request due to retention

policies.  (Id. at 54.)  Regarding this request, Litigation Coordinator Kraemer states,

> Regarding the post-order acknowledgement forms requested in
> request no. 6, CSP-Sacramento only retains such forms until the post
> orders are updated, which occurs on an annual basis.  Accordingly,
> in response to my inquiries, I was advised that the post-order
> acknowledgement forms for 2011, 2013 and 2016 were not retained.

(ECF No. 71-2 at 3.)

The undersigned cannot order defendants to produce documents that no longer exist.

Accordingly, the motion to compel as to request no. 6 is denied.

Request No. 7

Request no. 7 asked for, "the CDC 671-C, Post Assignment Schedule (PAS-Detail Part

C), form (i.e., for 2nd watch) for the dates of:  Sept. 22, 2011, Sept. 29, 2011, Oct. 3, 2011, Feb.

7, 2013 and Jan. 29, 2016, for SAC facility 'C.'"  (ECF No. 68 at 54.)

18

1    Defendants objected to this request as unduly broad and overly burdensome.  (Id.)  "The

2    post order schedule for staff in c-facility on second watch does not appear likely to lead to the

3    discovery of admissible evidence and, thus is not proportional to the needs of this case.  Fed. R.

4    Civ. P. 26(b)(1)."  (Id.)  Without waiving objections, defendants produced documents Bates Nos.

5    DEF 030-097 for February 7, 2013 and January 29, 2016.  (Id.)  The requested documents for the

6    2011 dates were not located due to retention policies.  (Id.)

7    In the motion to compel, plaintiff argues that the documents provided by defendants in

8    response to request no. 7, i.e., Bates Nos. DEF 030-097, were not relevant to his request. (Id. at

9    10.)  Litigation Coordinator Kraemer's declaration addresses this argument:

10   I understand Plaintiff contends that the Post Assignment Schedule
     documents produced in response to request no. 7 is not responsive to

11   his request.  However, upon my review of this request, which sought
     "CDC 671, Post Assignment Schedule (PAS Detail Part C)," and in

12   response to my inquiries, the documents produced were what I was
     given as responsive.  To the extent plaintiff contends "CDC 671, Post

13   Assignment Schedule (PAS Detail Part C)" would contain the duties
     of the "SAC FAC C program sergeant" he is mistaken.  Specific

14   duties are reflected in post orders, which are considered confidential,
     but could be provided in a redacted form due to security and safety

15   precautions.  However, although post orders were not requested, a
     search for post orders for the requested years was conducted.  No

16   post orders were located likely because post orders are typically
     supplanted on an annual basis and are generally not retained.

17   (ECF No. 71-1 at 3.)

18   The undersigned finds that defendants adequately responded to request no. 7.  After

19   plaintiff clarified the information sought in request no. 7, Litigation Coordinator Kraemer

20   determined that the documents containing the information he sought no longer exist.  The

21   undersigned cannot order defendants to produce documents that do not exist.  Accordingly, the

22   motion to compel as to request no. 7 is denied.

23   G.   Remaining Matters

24        Sanctions

25   Plaintiff moves for sanctions against defendants.  Federal Rule of Civil Procedure 37

26   provides that if a motion to compel is granted, or if the disclosures or requested discovery is

27   provided after the filing of the motion, "the court must, after giving an opportunity to be heard,

28   require the party or deponent whose conduct necessitated the motion, the party or attorney

19

1   advising that conduct, or both to pay the movant's reasonable expenses incurred in making the

2   motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).  However, the court "must not

3   order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the

4   disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or

5   objection was substantially justified; or (iii) other circumstances make an award of expenses

6   unjust."

7       Sanctions are not warranted because plaintiff failed to make a good faith attempt to obtain

8   the requested discovery without court action.  In addition, defendant' responses to plaintiff's

9   discovery requests do not warrant the imposition of sanctions.  Accordingly, the motion for

10   sanctions is denied.

11       *Extend Discovery Deadline*

12       In the motion to compel, plaintiff requests that the discovery deadline be extended so that

13   he may serve defendant Virga with two additional interrogatories and a request for production of

14   documents to defendant Haring.    (ECF No. 68 at 13-14.)  The undersigned also observes that in

15   the motion to compel, plaintiff requests permission to reopen discovery so that he may serve

16   defendant Haring with a modified version of Interrogatory no. 12.  (Id. at 6.)  Plaintiff alleges that

17   interrogatory no. 12 asked defendant Haring about a conversation he allegedly had with plaintiff

18   on September 22, 2011, but plaintiff meant to ask about a conversation on September 28, 2011.

19   (Id.)

20       The court will modify dates set forth in a scheduling order only upon a showing of good

21   cause by the moving party. Fed. R. Civ. P. 16(b); Johnson v. Mammoth Recreations, Inc., 975

22   F.2d 604, 608 (9th Cir. 1992).  The "good cause" standard also applies to requests to reopen

23   discovery.  See, e.g., Sheridan v. Reinke, 611 F. App'x 381, 384 (9th Cir. 2015) (applying

24   Johnson "good cause" requirement to motions to reopen discovery); Yeager v. Yeager, 2009 WL

25   1159175, at *2 (E.D. Cal. Apr. 29, 2009) (a party must show "good cause" to reopen discovery).

26       The primary factor courts consider in making a good cause determination is whether the

27   moving party was diligent in its attempts to complete discovery in a timely manner.  Johnson, 975

28   F.2d at 609.  If that party was not diligent, the inquiry should end and the request should be

1    denied.  Id.  The decision to reopen discovery involves an exercise of discretion.  Smith v. United

2    States, 834 F.2d 166, 169 (10th Cir. 1987) ("Whether to extend or reopen discovery is committed

3    to the sound discretion of the trial court and its decision will not be overturned on appeal absent

4    abuse of that discretion.").

5          Discovery closed on February 14, 2020.  (ECF No. 65.)  The dispositive motion deadline

6    is June 12, 2020.  (ECF No. 76.)  Plaintiff has not demonstrated why he was unable to complete

7    discovery before February 14, 2020.  Plaintiff also does not address when he discovered that

8    interrogatory no. 12 did not contain the correct date.  Accordingly, plaintiff's motion to reopen

9    discovery is denied because plaintiff had adequate opportunity to conduct discovery and has

10   failed to explain why he could not complete discovery within the time allowed.

11         Accordingly, **IT IS HEREBY ORDERED** that plaintiff's motion to compel (ECF No.

12   68) is denied in all respects but for request for admission no. 1 addressed to defendant Virga,

13   request for admission nos. 1 and 2 addressed to defendant Hinrich, and request for production of

14   documents no. 5; defendants shall provide plaintiff with further responses to these requests within

15   thirty days of the date of this order.

16   Dated:  May 20, 2020

17

18   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23   Cole851.com

24

25

26

27

28

                                            21