UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT COLEMAN,

          Plaintiff,

    v.

T. VIRGA, et al.,

          Defendants.

No.  2: 17-cv-0851 KJM KJN P

ORDER AND FINDINGS AND
RECOMMENDATIONS

I.     Introduction

     Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  On January 11, 2021, the undersigned recommended that defendants' summary judgment motion be granted.  (ECF No. 98.)  The undersigned also recommended that plaintiff's cross-motion for summary judgment be stricken as untimely.  (Id.)

     On September 30, 2021, the Honorable Kimberly J. Mueller found plaintiff's cross-motion for summary judgment timely.  (ECF No. 102.)  Judge Mueller remanded this matter back to the undersigned for consideration of plaintiff's cross-motion for summary judgment.  (Id.)  In the September 30, 2021 order, Judge Mueller did not address the undersigned's January 11, 2021 findings and recommendations addressing defendants' summary judgment motion.  (Id.)

     Accordingly, the undersigned herein considers defendants' summary judgment motion and plaintiff's cross-motion for summary judgment (ECF Nos. 80, 84).  For the reasons stated

1

herein, the undersigned recommends that defendants' summary judgment motion be granted and plaintiff's cross-motion for summary judgment be denied.

II.     Preliminary Matters

The January 11, 2021 findings and recommendations addressed several pending motions. In particular, the undersigned granted defendants' motion to strike plaintiff's sur-reply (ECF No. 90). The undersigned also denied plaintiff's motion for sanctions, for appointment of counsel and for appointment of an expert witness (ECF No. 92), plaintiff's supplemental motion for sanctions (ECF No. 93) and plaintiff's motion to amend evidence (ECF No. 94).

Plaintiff did not seek reconsideration of or otherwise object to the January 11, 2021 orders.[1]

The only order issued by the undersigned on January 11, 2021 impacted by Judge Mueller's September 30, 2021 order is the order granting defendants' motion to strike plaintiff's sur-reply. For that reason, the undersigned herein reconsiders the January 11, 2021 order granting defendants' motion to strike plaintiff's sur-reply. The undersigned need not restate the other orders addressed in the January 11, 2021 order and findings and recommendations.

*Defendants' Motion to Strike Plaintiff's Sur-Reply (ECF No. 90)*

Defendants move to strike plaintiff's pleading titled "reply in support of plaintiff's cross motion for summary judgment and opposition to defendants' motion for summary judgment," filed July 29, 2020, pursuant to the mailbox rule. (ECF Nos. 88, 90.) Defendants argue that this pleading is an improper sur-reply. (ECF No. 90.)

On June 9, 2020, defendants filed the pending summary judgment motion. (ECF No. 80.) On June 29, 2020, plaintiff filed an opposition and cross-motion for summary judgment. (ECF No. 84.) On July 7, 2020, defendants filed a reply to plaintiff's opposition and an opposition to plaintiff's cross-motion for summary judgment. (ECF No. 85.) On July 29, 2020, plaintiff filed the at-issue pleading. (ECF No. 88.)

////

---

[1]  Plaintiff filed objections to the recommendation that defendants' summary judgment motion be granted. (ECF No. 99.)

Plaintiff's July 29, 2020 pleading is a reply to defendants' opposition to his timely cross-motion for summary judgment.  Therefore, plaintiff's July 29, 2020 pleading is not an improper sur-reply.  Accordingly, defendants' motion to strike this pleading is denied.

III.    Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

1   establish the existence of such a factual dispute, the opposing party may not rely upon the

2   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

3   form of affidavits, and/or admissible discovery material in support of its contention that such a

4   dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

5   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

6   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

7   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

8   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

9   a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

10  (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

11  1564, 1575 (9th Cir. 1990).

12          In the endeavor to establish the existence of a factual dispute, the opposing party need not

13  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

14  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

15  trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

16  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

17  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

18  amendments).

19          In resolving a summary judgment motion, the court examines the pleadings, depositions,

20  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

21  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

22  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

23  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa

24  County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not

25  drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

26  which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,

27  1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a

28  genuine issue, the opposing party "must do more than simply show that there is some

4

1   metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

2   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

3   trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

4          By notice provided on March 14, 2018 (ECF No. 21), plaintiff was advised of the

5   requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil

6   Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

7   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

8          IV.    Plaintiff's Claims

9          This action proceeds on plaintiff's unverified amended complaint filed September 5, 2017,

10   as to defendants Haring, Hinrichs, Lynch and Virga.  (ECF No. 13.)  All relevant events occurred

11   at California State Prison-Sacramento ("CSP-Sac").

12          *Defendants Hinrichs, Lynch and Virga*

13          Plaintiff alleges that he requires single-cell housing based on mental illness.  (Id. at 2-3.)

14   Plaintiff alleges that in 2004, prison psychologist Dias requested that plaintiff receive single-cell

15   status for mental health reasons.  (Id. at 4.)  Prison officials at California State Prison-Centinela

16   denied this request.  (Id.)  Plaintiff alleges that the failure of prison staff to accommodate his need

17   for special housing based on his mental health contributed to the deterioration of his mental

18   health.  (Id. at 5.)  As a result of the deterioration of his mental health, plaintiff was placed in the

19   Crisis Treatment Center ("CTC") of various prisons for suicidal ideation/suicide attempts and was

20   involuntarily medicated for three years.  (Id.)

21          Plaintiff alleges that in 2013, defendants Hinrichs, Lynch and Virga denied his requests

22   for single-cell housing, made in an administrative grievance, on the grounds that plaintiff did not

23   have a history of in-cell physical or sexual violence against a cellmate.  (Id. at 2-3.)  In other

24   words, plaintiff claims defendants Hinrichs, Lynch and Virga denied plaintiff's request for single-

25   cell housing without regard to plaintiff's mental health needs.  Plaintiff alleges that these

26   defendants failed to consider his mental health needs pursuant to a "practice or custom."  (Id. at

27   3.)  Plaintiff alleges that this was a policy or practice of the California Department of Corrections

28   and Rehabilitation ("CDCR") because in 2016, CDCR Secretary Scott Kernan issued a

memorandum clarifying that prison staff were to consider, among other things, inmate mental health, when considering whether to grant single-cell status.  (Id.)

Plaintiff alleges that defendants Hinrichs, Lynch and Virga violated his right "not to be placed in condition of confinement that posed an unreasonable risk of harm to his future and current health…" (Id. at 18.)

*Defendant Haring*

Plaintiff alleges that in September 2011, he was housed in a cell containing side-by-side beds pursuant to a custom carried out by defendant Virga mandating that certain disabled inmates be housed in side-by-side bed cells.  (Id. at 7.)  Plaintiff alleges that side-by-side beds aggravate his mental illness.  (Id. at 5.)  Plaintiff alleges that he expressed his housing concerns to defendant Haring.  (Id.)  Plaintiff alleges that defendant Haring refused to move him from the cell even after plaintiff warned him that the housing arrangement would be harmful to his mental disorder.  (Id. at 7-8.)

V.   Defendants' Summary Judgment Motion

A.  Preliminary Matters

*Clarification of Plaintiff's Legal Claims*

The undersigned finds that plaintiff's amended complaint raises the following legal claims.  First, plaintiff alleges that defendants Hinrichs, Lynch and Virga violated the Eighth Amendment when they denied his grievance requesting single-cell status pursuant to a policy that allowed single-cell status only for inmates with a history of in-cell physical or sexual violence against a cellmate.  Second, plaintiff alleges that in September 2011, defendant Haring violated the Eighth Amendment when he placed plaintiff in a cell with side-by-side beds.  Third, plaintiff alleges that in September 2011, he was placed in the side-by-side bed cell pursuant to a policy enacted by defendant Virga mandating that certain disabled inmates be housed in side-by-side bed cells.

*Procedural Deficiencies*

In the reply, defendants argue that plaintiff failed to respond to their statement of undisputed facts, despite having received notice under Rand.  On these grounds, defendants

6

1    request that the court find defendants' facts undisputed.

2         Because plaintiff is proceeding pro se, the undersigned considers plaintiff's opposition,

3    despite plaintiff's failure to respond to defendants' statement of undisputed facts.

4         *Defendants' Objections to Plaintiff's Evidence (ECF No. 85-2)*

5         In objection 1, defendants object to the declarations of inmate Ronald Robinson, attached

6    to plaintiff's opposition, on the grounds that the declarant lacks personal knowledge of the facts,

7    his statements are hearsay and they are irrelevant.  (See ECF No. 84 at 44-45.)  In his first

8    declaration, inmate Robinson states that from February 2010-2015, he "was aware" of the

9    institutional practice to house medically disabled prisoners in side-by-side beds.  (Id. at 44.)

10   Inmate Robinson states, "My knowledge of this issue was brought to my attention by general

11   discontent voiced by various other prisoners."  (Id.)  In his second declaration, inmate Robinson

12   states that he knew that inmate Jefferies was openly gay.  (Id. at 45.)

13        Inmate Robinson's statements regarding the alleged practice to house medically disabled

14   prisoners in side-by-side beds is not based on personal knowledge.  See Fed. R. Evid. 602 ("A

15   witness may testify to support a matter only if evidence is introduced sufficient to support a

16   finding that the witness has personal knowledge of the matter.")  Instead, inmate Robinson's

17   statements regarding the alleged practice, offered for the truth of the matter, are based on hearsay.

18   Accordingly, defendants' objection to inmate Robinson's statements regarding the alleged

19   practice of housing medically disabled prisoners in side-by-side beds is sustained.

20        Inmate Robinson's declaration regarding inmate Jeffries is not relevant to any claim

21   concerning defendant Haring (or any other defendant).  Accordingly, this declaration is excluded

22   from consideration.

23        In objections 2-7, defendants object to statements in plaintiff's declaration submitted in

24   support of his opposition which are related to the merits of his claims against defendant Haring.

25   In objection 2, defendants object to plaintiff's statements that he told defendant Haring that he

26   would "rather just kill himself" on September 28, 2011.  (ECF No. 84 at 36.)  In objection 3,

27   defendants object to plaintiff's statement that, on September 28, 2011, he was left to stand in a

28   small, cramped cage on his injured knee for approximately seven hours.  (Id.)

7

1    In objection 4, defendants object to plaintiff's statement that his injured knee required the

2    aid of a nurse and doctor after standing on it for seven hours in the holding cell.  (Id.)  In

3    objection 5, defendants object to plaintiff's statement that defendant Haring was aware of his

4    mental condition.  (Id. at 36-37.)  In objection 6, defendants object to plaintiff's statement that on

5    September 29, 2011, Captain Shannan made plaintiff aware that he was going to building 7, cell

6    101, to be housed in a side-by-side cell with an openly gay inmate.  (Id. at 37.)  In objection 7,

7    defendants object to plaintiff's statement that on September 29, 2011, he refused to be housed

8    with the openly gay inmate because he was sure that defendant Haring had something to do with

9    it.  (Id.)

10    As discussed herein, the undersigned finds that plaintiff's claims against defendant Haring

11    are barred by the statute of limitations and released by the settlement of a prior action.  Therefore,

12    the undersigned need not consider the admissibility of the statements set forth above as to the

13    merits of plaintiff's claims against defendant Haring.  In addition, plaintiff's statements set forth

14    above are not relevant to plaintiff's argument that his claims against defendant Haring are timely

15    pursuant to the continuing violation doctrine.  For these reasons, the undersigned need not

16    consider the admissibility of these statements as to plaintiff's argument regarding applicability of

17    the continuing violation doctrine.

18    In objection 8, defendants object to plaintiff's statements in his declaration submitted in

19    support of his opposition at paragraphs 28-32.  In paragraph 28, plaintiff states that on September

20    16, 2015, he was housed in a bunk bed.  (Id. at 38-39.)  In paragraph 29, plaintiff states, "On

21    January 29, 2016, I was relocated back to a side by side bed cell."  (Id.)  In paragraph 30, plaintiff

22    states that because he was constantly being compelled to endure the "unlawful practice of being

23    housed in unfavorable cells," he tried to hang himself in 2016.  (Id.)  In paragraph 31, plaintiff

24    states that because of his unsuccessful suicide attempt, his level of care was raised to the

25    Enhanced Outpatient Program.  (Id. at 39.)  In paragraph 32, plaintiff states that on May 28, 2014,

26    he refused to go back to the mainline because of his mental illness and would not return until he

27    received a single cell.  (Id.)

28    ////

Defendants object to the statements in paragraphs 28-32 on the grounds that they are not relevant to the merits of plaintiff's claims against defendants. The claim against defendant Haring is based on events occurring on September 28, 2011, and the claims against defendants Hinrichs, Virga and Lynch are based on their review of a grievance plaintiff submitted in 2013.

The undersigned agrees that the statements in paragraphs 28-32 are not relevant to the merits of plaintiff's claims alleging that defendant Haring placed him in a side-by-side bed cell in September 2011 and that defendants Lynch, Hinrich and Virga denied his request for single-cell status. However, to the extent the statements set forth above are relevant to plaintiff's argument that his claims against defendant Haring are not barred by the statute of limitations pursuant to the continuing violation doctrine, defendants' objections are overruled.

In objection 9, defendants object to plaintiff's statement in his declaration that defendants denied his request for exclusion from side-by-side beds or single cell because of a policy, custom, or practice by the departments' officials who deny inmate requests for special housing because their records do not contain a history of in-cell abuse. (Id.) In support of this statement, plaintiff cites his deposition. (Id.) Defendants object to this statement on the grounds that it lacks personal knowledge of the facts stated, lacks foundation, is hearsay and contradicts plaintiff's deposition testimony.

In his declaration, attached to his opposition, plaintiff cites his deposition, referred to as exhibit 5, in support of his claim that defendants denied his request to be excluded from side-by-side bed cells or single cells pursuant to a policy. (ECF No. 84 at 39, ¶ 33.) Plaintiff's opposition does not contain an exhibit 5. In addition, plaintiff does not cite the page in his deposition where he testified regarding the alleged policy. Plaintiff's deposition transcript is 97 pages long. The undersigned will not comb through plaintiff's deposition to find the pertinent testimony. On these grounds, defendants' objection to this statement in plaintiff's declaration is sustained.

In objection 10, defendants object to plaintiff's statement in his declaration that while plaintiff was incarcerated at California State Prison-Lancaster ("LAC"), he attempted to receive single-cell status, but this request was denied because plaintiff's prison record did not contain a history of in-cell abuse. (Id.) In support of this claim, plaintiff cites exhibit J attached to the

1   amended complaint filed September 1, 2017.  (ECF No. 12 at 52.)  Exhibit J is a classification

2   committee chrono from LAC dated April 4, 2017.  (Id.)  This chrono states that plaintiff was

3   found to meet the double-cell criteria for various reasons unrelated to his mental health.  (Id.)

4   Defendants object to plaintiff's statement in his declaration that he was denied single-cell status at

5   LAC on the grounds that it is not relevant because plaintiff's claims against defendants occurred

6   at CSP-Sacramento in 2013.

7       The undersigned finds that the 2017 LAC classification committee chrono is not relevant

8   to plaintiff's claim challenging defendants' denial of his request for single-cell status in 2013 at

9   CSP-Sac.  Accordingly, plaintiff's statement regarding events occurring at LAC is excluded from

10  consideration.

11      B.   Are Plaintiff's Claims Against Defendant Haring Barred by the Statute of

12           Limitations?

13  *Legal Standard*

14      For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is

15  California's statute of limitations for personal injury actions.  See Wallace v. Kato, 549 U.S. 384,

16  387-88 (2007).  In California, there is a two-year statute of limitations in § 1983 cases.  See Cal.

17  Civ. Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004); Jones v.

18  Blanas, 393 F.3d 918, 927 (9th Cir. 2004) ("[f]or actions under 42 U.S.C. § 1983, courts apply

19  the forum state's statute of limitations for personal injury actions.").

20      State tolling statutes also apply to § 1983 actions.  See Elliott v. City of Union City, 25

21  F.3d 800, 802 (1994) (citing Hardin v. Straub, 490 U.S. 536, 543-44 (1998)).  California Civil

22  Procedure Code § 352.1(a) provides tolling of the statute of limitations for two years when the

23  plaintiff, "at the time the cause of action accrued, [is] imprisoned on a criminal charge, or in

24  execution under sentence of a criminal court for a term of less than for life."  Accordingly,

25  prisoners generally have four years from the time the claim accrues to file their action.

26      The statute of limitations is tolled for the time it takes for a prisoner to administratively

27  exhaust his underlying grievances.  See Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005)

28  ("the applicable statute of limitations must be tolled while a prisoner completes the mandatory

10

1    exhaustion process"

2         Notwithstanding the application of the forum's state law regarding the statute of

3    limitations, including statutory and equitable tolling, in the context of a § 1983 action, it is

4    "federal law" which "governs when a claim accrues." Fink v. Shedler, 192 F.3d 911, 914 (9th

5    Cir. 1999) (citing Elliott v. City of Union City, 25 F.3d 800, 801-02 (9th Cir.1994)).  "A claim

6    accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of

7    action." Id. (citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.1996)).

8         *Discussion*

9         Defendants argue that plaintiff's claims against defendant Haring accrued in September

10   2011 when defendant Haring allegedly refused to move plaintiff from the cell containing side-by-

11   side beds.  Defendants state that plaintiff's claims specifically accrued on September 28, 2011,

12   which is the date defendant Haring issued plaintiff a rules violation report for refusing to return to

13   his cell.  Defendants argue that plaintiff had four years from September 28, 2011, i.e., until

14   September 28, 2015, to file a timely action.  Defendants argue that the instant action, filed on

15   April 19, 2017 pursuant to the mailbox rule, was filed a year and a half too late.

16        Defendants argue that including the time it took plaintiff to exhaust his available

17   administrative remedies, plaintiff's claim against defendant Haring is time barred.  Defendants

18   state that plaintiff submitted his first level administrative grievance on August 6, 2013, and the

19   process was complete on January 28, 2014, i.e., a period of 176 days, including the last day.  (See

20   ECF No. 80-4 at 66 (Third Level Decision for grievance no. SAC-13-02151 dated January 28,

21   2014); id. at 68-74 (602 grievance signed by plaintiff on August 6, 2013 for grievance SAC-13-

22   02151)).  Adding 176 days to September 28, 2015 extends the statute of limitations to March 22,

23   2016.  The instant action, filed April 19, 2017, is still not timely.[2]

24   ////

---

25   [2] The undersigned observes that grievance SAC-13-02151 raised plaintiff's claim that defendant
     Haring housed plaintiff in a cell with a side-by-side bed.  (Id. at 70.)  In his response to
26   defendants' interrogatories, plaintiff also states that grievance no. SAC-13-02151 exhausted his
     administrative remedies as to his claims against defendant Haring.  (ECF No. 80-4 at 119.)
27   Therefore, the parties do not dispute that grievance no. SAC-13-02151 exhausted plaintiff's
     claims against defendant Haring.
28

1    In his opposition, plaintiff does not appear to dispute that his claims against defendant

2    Haring arose on September 28, 2011.  Plaintiff argues that his claims against defendant Haring

3    are not barred by the statute of limitations based on the continuing violation doctrine.  (ECF No.

4    84 at 19-21.)

5    "The continuing violation doctrine is an equitable doctrine designed 'to prevent a

6    defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the

7    same sort." Herrington v. Bristol, 2019 WL 7598855, at *14 (D. Ore. July 29, 2019) (citing

8    O'Loghlin v. Cty of Orange, 229 F.3d 871, 875 (9th Cir. 2000)).  "A continuing violation, or

9    continuing tort, occurs when a series of wrongful acts of the same nature causes the alleged harm,

10   rather than a specific act within the larger pattern of wrongful conduct."  Id. (citing Flowers v.

11   Carville, 310 F.3d 1118, 1126 (9th Cir. 2002) (citing Page v. United States, 729 F.2d 818, 821

12   (D.C. Cir. 1984)).  "The doctrine thus comes into play only where there is no discrete act or

13   incident that can fairly be determined to have caused the alleged harm."  Id. (citing Flowers, 310

14   F.3d at 1126).  "If the continuing violation doctrine applies, the cause of action accrues when the

15   tortious conduct ceases."  Id. (citing Flowers, 310 F.3d at 1126).

16   "The continuing violation doctrine applies to Section 1983 actions."  Id. at *15 (citing

17   Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001)).  "The Ninth Circuit has yet to apply the

18   doctrine to Eighth Amendment deliberate indifference claims, but it has recently suggested a

19   willingness to do so."  Id. (citing Chestra v. Davis, 747 F. App'x 626, 627 (9th Cir. 2019) ("And,

20   even assuming that the continuing-violation doctrine applies [to this Eighth Amendment

21   deliberate indifference claim], Chestra does not allege sufficient facts within the statute of

22   limitations to satisfy this doctrine").  "Furthermore, other circuits have applied the doctrine to such

23   claims, as have many district courts in this circuit."  Id. (citing Heard v. Sheahan, 253 F.3d316,

24   318 (7th Cir. 2001) (defendants' alleged continuous refusal to treat a prisoner's hernia was a

25   "series of wrongful acts" which created a "series of claims"); Lavellee v. Listi, 611 F.2d 1129,

26   1132 (5th Cir. 1980) ("[F]ailure to provide needed and requested medical attention constitutes a

27   continuing tort, which does not accrue until the date medical attention is provided"); Sheridan v.

28   Reinke, 2012 WL1067079, at *5 (D. Idaho Mar. 28, 2012) (allegations of continuing deliberate

1    indifference to prisoner's personal safety were sufficiently related to survive motion to dismiss);

2    Guitterrez v. Williams, 2011 WL 2559788, at *5 (D. Or. June 29, 2011) (pro se plaintiff's

3    allegations that suggested a number of Eighth Amendment violations occurred during the two-

4    year limitations period was sufficient to defeat motion to dismiss based on timeliness).

5          "The continuing violation doctrine therefore may toll the two-year statute of limitations if

6    [plaintiff] can provide evidence the alleged acts 'are related closely enough to constitute a

7    continuing violation, and that one or more of the acts falls within the limitations period.'" Id.

8    (quoting Knox, 260 F.3d at 1013) (quoting DeGrassi v. City of Glendora, 207 F.3d 636, 645 (9th

9    Cir. 2000)).  "In considering whether the doctrine applies, '[e]ach defendant's conduct is

10   separately evaluated to determine if that defendant engaged in a continuing pattern of

11   violations.'" Id. (quoting Alexander v. Williams, 2013 WL 6180598, at *15 (D. Or. Nov. 25,

12   2013) (quoting Davis v. N.J. Dep't of Corr., 2011 WL 5526081, at *6 (D.N.J. Nov. 14, 2011)).

13   "However, the continuing violation doctrine does not apply if the harm alleged is a 'mere

14   continuing impact from past violations,'" Id. (quoting Knox, 260 F.3d at 1013), "or if the claim is

15   'based on an independently wrongful, discrete act.'" Id. (quoting Pouncil v. Tilton, 704 F.3d 568,

16   581 (9th Cir. 2012)).  "Thus, 'the critical distinction in the continuing violation analysis is

17   whether the plaintiff complains of the present consequence of a one-time violation, which does

18   not extend the limitations period, or the continuation of that violation into the present, which

19   does.'" Id. (quoting Brown v. Ga. Bd. Of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir.

20   2003) (citation omitted)).

21         In support of his argument that the continuing violation doctrine applies to his claims

22   against defendant Haring, plaintiff alleges that he was placed in a side-by-side bed from October

23   3, 2011 until January 28, 2013, from February 7, 2013 to June 28, 2013, and again on January 29,

24   2016.  (ECF No. 84 at 38.)

25         Assuming applicability of the continuing violation doctrine to plaintiff's claims against

26   defendant Haring, plaintiff does not allege a series of ongoing, related acts by defendant Haring,

27   of which at least one falls within the period of limitations.  Rather, plaintiff alleges that defendant

28   Haring violated his constitutional rights during one discrete incident in September 2011 when

1    defendant Haring allegedly refused to move plaintiff from the cell containing a side-by-side bed.

2    Plaintiff does not allege (or demonstrate) that defendant Haring continued to be responsible for

3    plaintiff's placement in cells with side-by-side beds after September 28, 2011.  Therefore,

4    plaintiff has not demonstrated applicability of the continuing violation doctrine.

5         For the reasons discussed above, the undersigned finds that plaintiff's claims against

6    defendant Haring are barred by the statute of limitations.  On these grounds, defendant Haring

7    should be granted summary judgment.

8              C.   Did Plaintiff Release His Claims Against All Defendants When He Settled His

9                   Prior Action In 2017?

10        Defendants argue that plaintiff released all claims raised in the instant action in the

11   settlement agreement reached in Coleman v. CDCR, 2:13-cv-1021 JAM KJN P (E.D.).

12        A release terminates legal liability between the releasor and the releasee.  McKee v.

13   McKenna, 2012 WL 4127732, at *4 (W.D. Wash. Aug. 10, 2012).  The interpretation and validity

14   of a release of federal claims is governed by federal law.  Id.; see Jones v. Taber, 648 F.2d 1201,

15   1203 (9th Cir. 1981); Stroman v. West Coast Grocery Co., 884 F.2d 458, 461 (9th Cir. 1989).

16   "Moreover, 'an agreement need not specifically recite the particular claims waived in order to be

17   effective.'"  Id. (quoting Stroman, 884 F.2d at 461).

18        A release of claims for violations of civil and constitutional rights must be voluntary,

19   deliberate, and informed.   Id. (citing Jones, 648 F.2d at 1203).  "A party seeking to rely on a

20   release in a § 1983 action has the burden of proving its validity."  Id. (citing Jones, 648 F.3d at

21   1203–04).

22        Case no. 13-cv-1021 proceeded on plaintiff's second amended complaint against two

23   defendants named in the instant action, i.e., defendants Haring and Virga, as well as defendants

24   DeRoco and Clough.  See 13-cv-1021 JAM KJN P (ECF No. 67 at 1).  In Case 13-cv-1021,

25   plaintiff alleged that he was discriminated against in violation of § 504 of the Rehabilitation Act

26   ("RA"), based on his mental and physical disability, when defendant Haring denied plaintiff

27   bunk-bed housing, and insisted on housing plaintiff in side-by-side beds cells.  Id. (ECF No. 67 at

28   1-2.)  Plaintiff also alleged that defendant Haring violated his Eighth Amendment rights by his

14

1    efforts to place plaintiff in the side-by-side bed cell on September 28, 2011.  Id.  (ECF No. 67 at

2    2, 8-9.)

3         In Case 13-cv-1021, plaintiff also alleged that defendants Virga, DeRoco and Clough

4    violated plaintiff's right not to be discriminated against by regarding plaintiff as affiliated or

5    associated with a "disruptive group" which took part in racial riots on December 7, 2011 and

6    April 16, 2012, even though plaintiff did not participate in the riots.  Id. (ECF No. 67 at 2-3.)

7    Plaintiff challenged the extended modified program on equal protection grounds.  Id. (ECF No.

8    67 at 2-3.)  In Case 13-cv-1021, plaintiff also alleged that defendants Virga, DeRoco and Clough

9    were deliberately indifferent to plaintiff's need for outdoor exercise from December 7, 2011, until

10   February 6, 2012.  Id. (ECF No. 67 at 3.)

11        On December 9, 2015, plaintiff's claims against defendant Haring in Case 13-cv-1021

12   were dismissed based on plaintiff's failure to exhaust administrative remedies.  Id. (ECF No. 77.)

13        On March 6, 2017, the parties voluntarily dismissed Case 13-cv-1021 pursuant to a

14   settlement agreement.  Id. (ECF Nos. 130, 131.)  The settlement agreement states, in relevant

15   part, that it concerns plaintiff "and the California Department of Corrections and Rehabilitation

16   ("CDCR") on behalf of defendants Virga, deRoco, Haring and Clough."  (ECF No. 80-4 at 101.)

17   The settlement agreement states, in relevant part, that the agreement "covers all of the claims and

18   allegations in the complaint and any amendments thereto against defendants, whether named or

19   unnamed and whether served or unserved, and any past or current employees of CDCR."  (Id.)

20        The settlement agreement states, in relevant part, that

> It is the intention of the parties in signing this agreement that it shall
> be effective as a full and final accord and satisfaction and release
> from all claims asserted in the complaint.  By signing this agreement,
> plaintiff releases CDCR, defendants, whether named or unnamed and
> whether served or unserved, and any other past or current CDCR
> employees from all claims, past, present and future, known or
> unknown, that could arise from the facts alleged in the complaint.

25   (Id. at 102.)

26        In the pending summary judgment motion, defendants argue that plaintiff released the

27   claims raised in the instant action because they arise from the facts alleged in Case 13-cv-1021.

28   Defendants contend that there can be no dispute that the release signed in Case 13-cv-1021 by

15

1  plaintiff was voluntary, deliberate and informed.  In support of the argument that plaintiff

2  understood the terms of the settlement agreement, defendants cite plaintiff's deposition testimony,

3  where plaintiff acknowledged his signature on the settlement agreement.  (ECF No. 80-4 at 61.)

4  Defendants contend that plaintiff signed the agreement and release after it was negotiated in a

5  neutral environment; plaintiff signed the release after a settlement conference conducted by a

6  United States magistrate judge (the undersigned), at which he indicated his understanding of the

7  terms; and plaintiff received $15,000 in exchange.

8        For the following reasons, the undersigned finds that plaintiff did not release his claims

9  against defendants Hinrichs, Lynch and Virga in the settlement agreement reached in Case 13-cv-

10  1021.  In the instant action, plaintiff alleges that defendants Hinrichs, Lynch and Virga denied his

11  request for single-cell status in 2013 without regard to plaintiff's mental health needs.  Plaintiff

12  alleges that these defendants failed to consider his mental health needs pursuant to a "practice or

13  custom," which did not consider inmate mental health when determining whether inmates

14  qualified for single-cell housing.  Plaintiff did not raise these claims against defendants Hinrichs,

15  Lynch and Virga in Case 13-cv-1021.  In addition, the claims raised against defendant Hinrichs,

16  Lynch and Virga in the instant action do not arise from the claim that defendant Haring subjected

17  plaintiff to side-by-side housing in 2011, raised in Case 13-cv-1021.[3]  The claims raised against

18  defendants Hinrichs, Lynch and Virga in the instant action also do not arise from the other claims

19  raised in Case 13-cv-1021.  Accordingly, defendants' motion for summary judgment on the

20  grounds that plaintiff released his claims against defendants Hinrichs, Lynch and Virga should be

21  denied.

22        It is clear that plaintiff raised the claim he now raises against defendant Haring in Case

23  13-cv-1021.  In his opposition, plaintiff argues that "no evidence exists that he knew or was

24  aware that the settlement agreement included his claims against defendant Haring."  (ECF No. 84

25  at 26.)

26

27  [3]  The court previously denied defendants' motion to dismiss the claims against defendants
    Hinrichs, Lynch and Virga on the grounds of claim preclusion, i.e., plaintiff could have raised
28  these claims in 13-cv-1021.  (See ECF Nos. 53, 56.)

1    In support of this argument, plaintiff cites <u>Jones v. Taber</u>, 648 F.2d 1201 (9th Cir. 1981),

2    where the Ninth Circuit found that, "[i]n the context of section 1983 waivers, several factor are

3    relevant:  although both parties may agree on certain facts, including the accuracy of the

4    transcript of the claimed settlement conference, summary judgment is precluded when conflicting

5    inferences might be drawn about a party's state of mind as reflected by objective indications."  <u>Id.</u>

6    at 1204.  In <u>Jones</u>, the court concluded that even the fact that Jones admitted that his signature on

7    the release was voluntary was not controlling.  <u>Id.</u>  The fact "that Jones admitted in his deposition

8    that his signature on the release was 'voluntary' is not by itself controlling in this regard, absent a

9    showing that he understood the meaning of the term in its legal sense."  <u>Id.</u>  "On the record before

10   us his statement amounts to little more than a legal conclusion on a question as to which he was

11   not well informed."  <u>Id.</u>  In <u>Jones</u>, the Ninth Circuit also found that "objective indications of

12   coercive pressures and a lack of understanding [footnote omitted] here that preclude granting

13   summary judgment for defendants."  <u>Id.</u>

14        In his verified declaration submitted in support of his opposition, plaintiff does not claim

15   that he did not understand that his settlement in Case 13-cv-1021 included his claims against

16   defendant Haring.  (<u>Id.</u> at 35-40.)  However, in the declaration filed in support of his reply,

17   plaintiff states that at the March 2, 2017 settlement hearing in Case 13-cv-1021, he "was never

18   made aware or given the impression that my agreement would include the dismissal without

19   prejudice defendant Haring.  Because the hearing only spoke on my claims against defendants

20   Virga, Deroco and Clough, i.e., my 'modified program' claims.  And the settlement transcripts

21   will bolster my claim."  (ECF No. 88 at 15-16.)

22        As discussed above, the written settlement agreement in Case 13-cv-1021 identifies

23   defendant Haring as one of the parties to the settlement.  (ECF No. 80-4.)  The written settlement

24   agreement specifically states that the agreement releases defendants (including defendant Haring)

25   from all claims, past, present and future, known or unknown, that arise or could arise from the

26   facts alleged in the complaint.  (<u>Id.</u> at 102.)  Thus, the written settlement agreement released

27   plaintiff's claims against defendant Haring, even though the claims against defendant Haring had

28   been dismissed based on plaintiff's failure to exhaust administrative remedies.

1    The undersigned has listened to the recording of the March 2, 2017 hearing where the

2    settlement agreement in Case 13-cv-1021 was placed on the record.  Although plaintiff's claims

3    against defendant Haring were not specifically discussed at this hearing, the undersigned

4    discussed with plaintiff the terms of the settlement agreement, as set forth above, including the

5    release.  At the hearing, the undersigned stated that plaintiff would receive $15,000 for the

6    resolution of "all claims" that plaintiff brought or could have brought in Case 13-cv-1021.  The

7    undersigned did not state that the settlement was limited to plaintiff's claims against defendants

8    Virga, Deroco and Clough, as plaintiff alleges in his declaration attached to his sur-reply.

9    Plaintiff expressed no confusion or concerns regarding the terms of the settlement agreement.

10    In Jones, supra, the record contained evidence suggesting that the plaintiff's agreement to

11    the release was not voluntary.  For this reason, the Ninth Circuit found that the plaintiff's

12    signature on the release was not sufficient evidence that his agreement to the release was

13    voluntary.  In contrast, in the instant case, the record contains no evidence demonstrating that at

14    the time plaintiff entered the settlement agreement in Case 13-cv-1021, plaintiff was coerced or

15    that he did not understand that the release included all of the claims he brought or could have

16    brought against defendants, including his claims against defendant Haring.  As discussed above,

17    the terms of the settlement agreement, signed by plaintiff, identified defendant Haring as a party

18    to the agreement and released plaintiff's claims against all defendants.

19    Accordingly, for the reasons discussed above, the undersigned finds that the evidence

20    demonstrates that plaintiff waived his claims against defendant Haring in the settlement

21    agreement reached in Case 13-cv-1021.  On these grounds, defendant Haring should be granted

22    summary judgment.

23    The undersigned further finds plaintiff's claim alleging that in September 2011, defendant

24    Haring housed him in a side-by-side bed cell, pursuant to a policy "mandated" by defendant

25    Virga that certain disabled inmates be housed in side-by-side bed cells, is also waived by the

26    settlement agreement reached in Case 13-cv-1021.  While plaintiff did not specifically raise a

27    claim against defendant Virga challenging this alleged policy in Case 13-cv-1021, this claim

28    arose from plaintiff's claim challenging defendant Haring's placement of plaintiff in a side-by-

1  side bed cell.  On these grounds, defendant Virga should be granted summary judgment as to this

2  claim.

3                    D.  <u>Did Defendants Hinrichs, Lynch and Virga Violate Plaintiff's Eighth Amendment</u>

4                      <u>Rights in 2013 When They Denied Plaintiff's Requests for Single-Cell Status?</u>

5                      *Legal Standard*

6        Where a prisoner's Eighth Amendment claim arises in the context of medical care,

7  including mental health care, the prisoner must allege and prove "acts or omissions sufficiently

8  harmful to evidence deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429

9  U.S. 97, 106 (1976).  An Eighth Amendment medical claim has two elements: "the seriousness of

10  the prisoner's medical need and the nature of the defendant's response to that need."  <u>McGuckin</u>

11  <u>v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by <u>WMX Techs., Inc.</u>

12  <u>v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

13        A medical need is serious "if the failure to treat the prisoner's condition could result in

14  further significant injury or the 'unnecessary and wanton infliction of pain.'"  <u>McGuckin</u>, 974

15  F.2d at 1059 (quoting <u>Estell</u>e, 429 U.S. at 104).  Indications of a serious medical need include

16  "the presence of a medical condition that significantly affects an individual's daily activities."  <u>Id.</u>

17  at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the

18  objective requirement for proving an Eighth Amendment violation.  <u>Farmer v. Brennan</u>, 511 U.S.

19  825, 834 (1994).

20        If a prisoner establishes the existence of a serious medical need, he must then show that

21  prisoner officials responded to the serious medical need with deliberate indifference.  <u>See</u> <u>Farmer</u>,

22  511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny,

23  delay, or intentionally interfere with medical treatment, or may be shown by the way in which

24  prison officials provide medical care.  <u>Hutchinson v. United States</u>, 838 F.2d 390, 393-94 (9th

25  Cir. 1988).

26        Before it can be said that a prisoner's civil rights have been abridged with regard to

27  medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,'

28  'negligence,' or 'medical malpractice' will not support this cause of action."  <u>Broughton v. Cutter</u>

1   Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also

2   Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in

3   diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

4   Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of

5   mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for

6   the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

7          Finally, mere differences of opinion between a prisoner and prison medical staff or

8   between medical professionals as to the proper course of treatment for a medical condition do not

9   give rise to a § 1983 claim.  See Toguchi, 391 F.3d at 1058.

10         *Defendants' Motion*

11         Defendants contend that plaintiff's claims against them are based on their denial of

12   plaintiff's administrative grievances requesting single-cell housing, as alleged in the September 5,

13   2017 amended complaint.  At his deposition, plaintiff testified that his claims against defendants

14   Virga, Hinrichs and Lynch were based on their denial of his grievances requesting single-cell

15   status filed in 2013.  (Plaintiff's deposition at 19, 53-56.)

16         Defendants move for summary judgment on the grounds that when they denied plaintiff's

17   grievances requesting single-cell status, nothing in plaintiff's records indicated that a mental

18   health clinician had recommended him for single-cell status.  Therefore, defendants argue, they

19   did not act with deliberate indifference when they denied plaintiff's grievances.  The undersigned

20   sets forth defendants' evidence in support of these arguments herein.

21         In his declaration, defendant Virga states that per CDCR regulations and the Department's

22   Operational Manual ("DOM"), classification committees, not individual staff, determine whether

23   an inmate should be single-celled or double-celled.  (ECF No. 80-7 at 2.)  Under CDCR

24   regulations, the expectation is that all inmates are expected to double-cell and to accept housing

25   as assigned; this applies whether the inmate is housed in general population, administrative

26   segregation or a security housing unit.  (Id.)  Per CDCR regulations, inmates are not entitled to

27   single-cell assignment, housing location of choice or to a cellmate of their choice.  (Id.)

28         Defendant Virga states in his declaration that under the regulations, classification

20

1    committees may consider inmates for single-celling based on factors enumerated in the DOM and

2    regulations and will consider any recommendations of medical or mental health staff for single-

3    cell status.  (Id.)

4         In grievance no. SAC-13-02151, plaintiff appealed the July 3, 2013 decision of the

5    Institutional Classification Committee ("ICC") for the Administrative Segregation Unit ("ASU")

6    finding him eligible for double-cell status.  (Id. at 5-7.)  In this grievance, plaintiff claimed that

7    clinicians had requested that he be given single-cell status.  (Id. at 5-7.)  Defendant Virga served

8    as the chairperson of the July 3, 2013 Classification Committee which found that plaintiff

9    qualified for double-cell status.  (Id. at 12.)

10        The July 3, 2013 Classification Committee report states, in relevant part, "Double Cell

11   with compatible housing status based on no documented history of in-cell violence, no predatory

12   behavior, and no victimization concerns.  ICC has reviewed and discussed the outside the cell

13   violence; RVR 12/05/01 Mutual Combat."  (Id.)  The Classification Committee report also

14   contains a mental health assessment stating:  "The treating clinician presented ICC with a Mental

15   Health Assessment that included S's Level of Care, treatment needs, ability to

16   understand/participate in the classification committee hearing, and effects of this psychological

17   state will not decompensate if ordered retained in segregated housing."  (Id.)

18        In his declaration, defendant Virga states that mental health clinician C. Moazam was

19   present at the committee.  (Id. at 2.)  Defendant Virga states that if a single cell had been

20   recommended due to plaintiff's mental health status, any such recommendation would have been

21   considered by the committee and would have been reflected on the 128-G.  (Id.)  Defendant Virga

22   states that the fact that no recommendation is noted on the 128-G indicates that no such

23   recommendation was made.  (Id.)  Defendant Virga also states that plaintiff refused to appear at

24   the committee.  (Id.)  Defendant Virga states that because plaintiff did not attend the committee,

25   the committee did not have plaintiff's input as to double or single-celling and his mental health

26   condition.  (Id.)

27        On September 19, 2013, defendant Hinrichs denied plaintiff's first level grievance, no.

28   SAC-13-02151, in which plaintiff claimed clinicians gave him single-cell status and excluded

plaintiff from side-by-side beds.  (ECF No. 80-6 at 9.)  Plaintiff stated that he should be single-celled "based on a medical standpoint."  (Id.)

In denying plaintiff's grievance, defendant Hinrichs wrote,

> During all your General Population time, you have been double celled by all committees.  You have also been doubled celled while in ASU.  The Mental Health documents you have provided do not place you on single cell status or exclude you from cells with side by side beds.  The one document (CDCR 7230 MH) only states a discussion you had with a clinician wherein you requested single cell and exclusion from the cells with side by side beds.  This was dated October 1, 2011.  Clinicians cannot make you single celled or exclude you from certain housing.  The clinician did refer you on January 23, 2004 to Inter Disciplinary Treatment Team (IDTT) for evaluation of Single Cell Status.  You have been evaluated at each Committee and it has been determined based on no documented history of in-cell violence, no predatory behavior and no victimization concerns, you can be double celled.
>
> Mental Health staff were contacted to review your health records regarding single cell.  Mental health staff reported, "On his most recent treatment plan, 'no recommendation' for housing is marked.  There is no mention of single cell in the recent notes or treatment plan."
>
> It is the expectation of the department for all inmates to double cell.

(Id. 80-6 at 9.)

In his declaration submitted in support of the summary judgment motion, defendant Hinrichs states that in reviewing plaintiff's grievance, he reviewed the classification committee's actions, relevant departmental regulations, and any documents attached to plaintiff's appeal, plaintiff's housing history and past classification committee actions.  (Id. at 2.)  Defendant Hinrichs states that custody staff do not have access to mental health or medical records, thus defendant Hinrichs could not review those records.  (Id.)  Defendant Hinrichs states that in addition, due to medical privacy laws, medical and mental health staff could only provide limited information to custody staff, which would usually be reflected in a mental and/or mental health chrono in the inmate's central file.  (Id.)  If a medical or mental health clinician believed a single cell was required by an inmate's medical or mental health condition, that would be reflected on a chrono in the central file.  (Id.)

Defendant Hinrichs states that as reflected in his first level response to plaintiff's

1   grievance, defendant Hinrichs's review of plaintiff's records reflected that all committees had

2   double-celled plaintiff throughout his incarceration with CDCR.  (Id.)  No mental health clinician

3   had placed plaintiff on single-cell status and the October 1, 2011 document plaintiff provided did

4   not indicate that the clinician wanted him single-celled.  (Id.)  In addition, as part of defendant

5   Hinrichs's review of plaintiff's appeal, defendant Hinrichs contacted mental health staff to review

6   plaintiff's health records regarding single-cell status.  (Id. 2-3.)  Mental health staff reported to

7   defendant Hinrichs that on plaintiff's most recent treatment plan, no recommendation for housing

8   was marked and there was no mention of single-cell in recent notes or treatment.  (Id. at 3.)

9   Therefore, no mental health clinician had recommended that plaintiff be single celled or excluded

10  from side-by-side cells when defendant Hinrichs reviewed plaintiff's grievance in September

11  2013.  (Id.)

12        On November 6, 2013, defendant Virga denied grievance no. SAC-S-13-02151 at the

13  second level of review.  (ECF No. 80-8 at 8.)  Defendant Lynch was designated by defendant

14  Virga to conduct an inquiry into plaintiff's grievance.  (Id.)  In his declaration submitted in

15  support of the summary judgment motion, defendant Lynch states that when he was assigned

16  plaintiff's appeal for review, he determined that the First Level of Review had conducted an

17  appropriate review and that the decision to classify plaintiff as double-celled was appropriate

18  based on the factors provided in CDCR regulations.  (Id. at 2.)

19        Defendant Lynch states that as reflected in the Second Level response, a review of

20  plaintiff's records reflected that all committees had double-celled plaintiff throughout his

21  incarceration at CDCR.  (Id.)  Defendant Lynch states that no mental health clinician had placed

22  plaintiff on single-cell status or recommended that plaintiff be single-celled or excluded from

23  side-by-side cells when defendant Lynch reviewed plaintiff's grievance in November 2013.  (Id.)

24  Defendant Lynch states, "Accordingly, there was nothing to indicate that any recommendation to

25  single-cell [plaintiff] for mental health reasons had been ignored by either the classification

26  committee or the First Level Reviewer."  (Id.)

27        In his declaration, defendant Virga states that as indicated in the second level response, he

28  reviewed and signed it.  (ECF No. 80-7 at 3.)  Defendant Virga states that at the second level, he

1   determined that the first level had conducted an appropriate review and that the decision to

2   classify plaintiff as double-celled was appropriate based on the factors provided in CDCR

3   regulations.  (Id.)  Defendant Virga states that as reflected in the second level response, a review

4   of plaintiff's records reflected that all committees had double-celled plaintiff throughout his

5   incarceration with CDCR.  (Id.)  No mental health clinician had placed plaintiff on single-cell

6   status or recommended that plaintiff be single-celled or excluded from side-by-side cells when he

7   reviewed plaintiff's grievance in November 2013.  (Id.)  Defendant Virga states, "Accordingly,

8   there was nothing to indicate that any recommendation to single-cell [plaintiff] for mental health

9   reasons had been ignored by either the classification committee or the first level reviewer."  (Id.)

10          Defendants argue that defendants Hinrichs, Virga and Lynch did not act with deliberate

11   indifference when they denied plaintiff's grievances requesting single cell status because at the

12   time they denied these grievances, plaintiff's records contained no recommendations from mental

13   health clinicians that plaintiff receive single-cell status.

14          *Plaintiff's Opposition*

15          In his opposition, plaintiff argues that defendants Virga, Lynch and Hinrichs disregarded

16   evidence that plaintiff was severely mentally ill at the time they denied his grievances.  (ECF No.

17   84 at 7.)  In support of this argument, plaintiff alleges that defendant Virga, as the Warden, had

18   received written notification that plaintiff was to be involuntarily medicated due to his mental

19   illness.  (Id.)  Plaintiff refers to an exhibit attached to his amended complaint.  (Id.)  It appears

20   that plaintiff is referring to an exhibit attached to his amended complaint filed September 1, 2017,

21   rather than the operative amended complaint filed September 5, 2017.

22          Attached to plaintiff's September 1, 2017 amended complaint is an order for plaintiff to be

23   involuntarily medicated, dated July 3, 2013.  (ECF No. 12 at 68-77.)  The order states that

24   plaintiff suffers from "bipolar mood disorder severe depression."  (Id. at 68.)  The report finds

25   that plaintiff is a danger to himself.  (Id.)  The report states,

26          The patient was admitted to the CTC because of suicidal intent.  He
               stated he plans to starve himself to death.  He has not eaten in nine
27          days.  He refused to take mediation, saying that they make him feel
               worse. He lies in his bed, has refused to come to the door to even talk
28          about this.

24

1    (Id.)

2       The report states that plaintiff, "is in a severe depressive state where he feels hopeless. He

3 is immersed in perceiving only the difficulties in his life, the only answer to which is to die." (Id.

4 at 69.) The report states that the likely harm plaintiff would suffer if not placed on psychiatric

5 medication would be "continued suicidal ideation, continued refusal to eat because of his stated

6 goal to starve himself to death. Organ damage can occur from such prolonged starvation." (Id. at

7 71.) The report also states that plaintiff was recently hospitalized twice in the Mental Health

8 Crisis Bed Unit for suicidal ideation. (Id. at 70.) The report also states that plaintiff was not

9 competent to consider treatment. (Id. at 73.) The report states, "He has no understanding of the

10 nature of depression and how it affects one's judgement. He has no understanding of the role of

11 medication in treating this depression." (Id. at 73.)

12       Attached to plaintiff's September 1, 2017 amended complaint is an "Interdisciplinary

13 Progress Note-General Psychiatry," dated October 27, 2014. (Id. at 81.) This progress note

14 describes plaintiff's mood as "dysphoric," plaintiff's affect as "labile," and plaintiff's insight and

15 judgment as "impaired." (Id.)

16       Plaintiff also argues that the suicide risk evaluation by Dr. Grosse and Dr. Bowerman

17 alerted defendants to plaintiff's mental health problems. (Id.) A report by Psychologist

18 Bowerman, dated September 30, 2011, is attached to the amended complaint filed September 1,

19 2017. (ECF No. 12 at 44.) This report states that plaintiff was seen for supporting/evaluative

20 session. (Id.) Plaintiff was currently on suicide precautions status and housed in AZZ-alternative

21 housing. (Id.) Plaintiff stated that he was upset about being repeatedly moved to unacceptable

22 cells or with inmates with whom he could not reside. (Id.) This report contains no

23 recommendation for single cell status. (Id.)

24       Also attached to the September 1, 2011 amended complaint is a progress note dated

25 October 1, 2011. (Id. at 46.) This note states that plaintiff reported that he had several cellies

26 over the last many months, and the layout of his cell is such that both beds are in close proximity,

27 causing plaintiff panic attacks and anxiety. (Id.) Plaintiff states that he has asked custody to

28 please be housed in one of the other cells where there are bunk beds or another arrangement that

1    will not trigger his anxiety.  (Id.)  The progress note states, "After discussing with the I/P

2    different approaches to trying to effect a change in cells, he agreed to go back to his housing and

3    talk to custody once more calmly about this request.  This clinician will also write a

4    recommendation to that effect in the discharge orders.  It was stressed to I/P that the decision to

5    change housing is solely in the discretion of custody."  (Id.)

6          The undersigned cannot locate in the court record any note by a clinician recommending a

7    change in plaintiff's housing status following issuance of October 1, 2011 progress note.

8          Plaintiff argues that in 2004, a mental health clinician recommended that he receive

9    single-cell status.  (ECF No. 84 at 14.)  Plaintiff attaches to his opposition a medical record dated

10   January 23, 2004, by Dr. Dias referring plaintiff for evaluation for single-cell status.  (Id. at 47.)

11         In the opposition, and in the operative amended complaint, plaintiff also alleges that

12   defendants denied his request for single-cell housing pursuant to a policy that did not require

13   prison officials to consider inmate mental health in making housing decisions.  (ECF No. 84 at 8,

14   14.)  In support of this argument, plaintiff cites a January 19, 2016 memorandum issued by

15   former CDCR Secretary Kernan addressed to Associate Directors, Divisions of Adult Institutions

16   and Wardens. (ECF No. 80-4 at 97.)  This memorandum states, in relevant part,

17
18   > This memorandum reiterates and clarifies the obligations of staff to
     > consider the vulnerability of inmates with medical, mental health
     > condition or developmental disabilities when determining whether to
     > grant single-cell status under the California Department of
19   > Corrections and Rehabilitation's Department Operation Manual
     > (DOM), Chapter 5, Article 46—Inmate Housing Assignments (IHA).
20

21   (Id. at 97.)

22         The memorandum states that an inmate with a medical, mental health condition or

23   developmental disabilities may be so severely disabled they cannot reasonably protect themselves

24   if physically threatened, or may have a condition or disability which increases their vulnerability

25   to attack, threats, or extortion by a cell partner.  (Id.)  The memorandum states that it is not

26    necessary that an inmate also demonstrate a history of in cell abuse in order to be approved for

27   single-cell status.  (Id.)

28         The memorandum sets forth examples of inmates who should be considered for single-cell

26

status, or other appropriate housing.  (Id. at 98.)  This includes inmates with mental health conditions that lead to bizarre or disruptive behavior, or psychotic episodes which may increase their vulnerability to attack, threats or extortion by a cell partner.  (Id.)

The memorandum states that if there is a question whether a medical or mental health condition is present, and consultation with medical or mental health staff is required, custodial staff shall submit a request for review and recommendations related to single-cell consideration. (Id.)  The memorandum states that the screening authority should consider the recommendations of medical and mental health staff regarding the most appropriate housing for the inmate given the vulnerability that may be created by their medical or mental health conditions.  (Id.)

Plaintiff argues that the January 19, 2016 memorandum was issued because prison officials, like defendants, failed to consider inmate mental health when considering whether inmates qualified for single-cell status.

*Discussion*

Defendants move for summary judgment on the grounds that they did not act with deliberate indifference to plaintiff's mental health when they denied his grievances challenging the July 3, 2013 ICC decision finding plaintiff eligible for double-cell status.

The undersigned herein sets forth the relevant regulations regarding consideration of inmate mental health when considering inmates for single or double cell status.

Section 54046.8 of the California Department of Corrections and Rehabilitation Department Operations Manual ("DOM") provides criteria for Single-Cell status.  This section states in relevant part, that single-cell status shall be considered for those inmates who demonstrate a history of in-cell abuse, significant in-cell violence towards a partner, verification of predatory behavior towards a cell partner, or who have been victimized in-cell by another inmate.  DOM, Article 5, § 54046.8 (2012).

DOM Section 54046.10 addresses recommendations for single-cells status due to mental health concerns:

> In cases where single-cell status is recommended by clinical staff due
> to mental health or medical concerns, a classification committee shall
> make the final determination of an inmate's cell assignment.  The

> classification committee shall consider the clinical recommendations made by the evaluating clinician with assistance from the clinician who participates in the committee and review the inmate's case factors when determining the housing assignment. Single-cell status based upon clinical recommendation is usually a temporary short-term measure and must be periodically reviewed…

DOM, Article 5, § 54046.10 (2012).

DOM Sections 54046.8 and 54046.10 were in effect at the time defendants reviewed plaintiff's grievances in 2013. DOM § 54046.10 specifically provides that the ICC shall consider recommendations by clinical staff for single-cell status due to mental health concerns. Therefore, at the time defendants denied plaintiff's grievances, the regulations permitted the ICC to grant single-cell status based on recommendations by clinical staff due to mental health concerns.

Plaintiff argues that defendants followed a policy that permitted them (and the ICC) to consider single-cell status only for inmates with a history of in-cell violence. Plaintiff argues that the policy did not permit defendants to consider inmate mental health when considering whether to grant single-cell status. As discussed above, the regulations in effect at the time defendants considered plaintiff's grievance permitted the ICC (and defendants) to grant single-cell status where clinical health staff recommended single-cell status based on mental health concerns. Therefore, plaintiff's argument that defendants denied his grievance pursuant to a policy that forbid them from considering his mental health is incorrect.

In his opposition, plaintiff argues that former CDCR Secretary Kernan issued the January 19, 2016 memorandum because CDCR had a policy to disregard inmate mental health when making housing assignments. As discussed above, the January 19, 2016 memorandum clarified the circumstances under which inmates could be granted single-cell status based on mental health issues. The memorandum expanded the circumstances under which custody staff could consider inmate mental health when making housing decisions, beyond consideration of recommendations from mental health staff as provided for in DOM § 54046.10. The January 19, 2016 memorandum created a new policy pursuant to which custody staff were required to submit requests for review of single-cell consideration when they had a question regarding whether a medical or mental health condition was present warranting single-cell housing. However, this

1   policy was not in effect at the time defendants considered grievance no. SAC-S-13-02151.  (See

2   ECF No. 80-6 at 3 (defendant Hinrichs's declaration:  "The January 19, 2016 memorandum

3   Coleman has referenced in this action could not have applied to my review of the appeal because

4   the appeal was submitted and decided in 2013.")  Therefore, defendants' alleged failure to follow

5   this policy is not evidence of deliberate indifference.

6        In the summary judgment motion, defendants argue that they properly considered

7   plaintiff's mental health when they denied plaintiff's request for single-cell status when

8   considering his grievance.  The undersigned considers this argument herein.

9        The undersigned is puzzled by the failure of the July 3, 2013 ICC decision to discuss

10   plaintiff's July 3, 2013 placement in the CTC, i.e., Correctional Treatment Center, because of

11   suicidal ideation and the order for plaintiff to be involuntarily medicated.  Although the ICC

12   report states that a treating clinician presented the ICC with a Mental Health Assessment, the

13   decision does not state that the treating clinician discussed plaintiff's placement in the CTC or the

14   involuntary medication order.  Thus, the July 3, 2013 decision indicates that the ICC (which

15   included defendant Virga) was unaware of plaintiff's placement in the CTC and the involuntary

16   medication order.[4]

17        As stated above, defendants contend that in reviewing grievance no. SAC-13-02151, they

18   reviewed the decision of the July 3, 2013 ICC to make sure all regulations were followed.  In his

19   grievance, plaintiff informed defendants that he was in the CTC on July 3, 2013, and did not

20   refuse to attend the hearing.  (ECF No. 80-7 at 5.)  In his grievance, plaintiff stated that he was

21   placed in the CTC due to suicidal ideations.  (Id.)  Therefore, because the ICC was apparently

22   unaware of plaintiff's placement in the CTC, it appears that defendants could have referred

23   plaintiff back to the ICC for reconsideration of his housing status.

24        However, in reviewing plaintiff's grievances, defendants reviewed plaintiff's records and

25   determined that no mental health clinician had placed plaintiff on single-cell status.  In addition,

26

27   [4] Based on plaintiff's placement in the CTC, plaintiff did not "refuse" to appear at the July 3,
2013 classification committee hearing, as stated by defendant Virga in his declaration and in the

28   ICC decision.

1  defendant Hinrichs also contacted mental health staff who informed him that plaintiff's most

2  recent treatment plan did not recommend single-cell status.  Therefore, even though the July 3,

3  2013 ICC apparently did not have accurate information regarding plaintiff's mental health status,

4  defendants upheld the July 3, 2013 ICC decision finding plaintiff eligible for double-cell status

5  because no mental health clinician recommended plaintiff for single-cell status, in compliance

6  with DOM § 54046.10.  Defendants did not fail to consider plaintiff's mental health when

7  denying his grievances.  For these reasons, the undersigned finds that defendants did not act with

8  deliberate indifference to plaintiff's mental health when they denied plaintiff's request for single-

9  cell status and upheld the July 3, 2013 ICC decision finding plaintiff eligible for double-cell

10  status.

11        The undersigned also finds that plaintiff's evidence demonstrating that a mental health

12  clinician recommended that he receive single-cell status in 2004 does not demonstrate that he

13  required single-cell status in 2013.  While plaintiff  provided an October 2, 2011 progress note

14  stating that the clinician would write a recommendation for plaintiff to be housed in a cell with

15  bunk beds or "another arrangement" that would not trigger plaintiff's anxiety caused by housing

16  in a cell with side-by-side beds, there is no evidence that this recommendation was ever made.

17        Plaintiff may also be arguing that defendants violated the Eighth Amendment when they

18  denied his request to be excluded from side-by-side bed cells, also made in grievance SAC-13-

19  02151.  Plaintiff presents no evidence that a mental health clinician recommended that he be

20  excluded from cells with side-by-side beds at the time defendants reviewed his grievance.  In his

21  response to plaintiff's grievance, defendant Virga states that, "A review of your Central File

22  reveals no documentation of any 'requests' by mental health staff concerning exclusion from

23  side-by-side beds…"  (ECF No. 80-7 at 10.)  In his declaration, defendant Hinrichs also states

24  that no mental health clinician recommended that plaintiff be excluded from side-by-side cells

25  when he reviewed plaintiff's grievance in September 2013.  (ECF No. 80-6 at 3.)  Because no

26  mental health clinician recommended that plaintiff be excluded from cells with side-by-side beds,

27  defendants did not act with deliberate indifference when denying this request.

28        For the reasons discussed above, the undersigned recommends that defendants Hinrichs,

1    Lynch and Virga be granted summary judgment.

2         *Qualified Immunity*

3         Defendants Hinrichs, Lynch and Virga also move for summary judgment on the grounds

4    that they are entitled to qualified immunity.

5         In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to

6    determine whether qualified immunity exists.  First, the court asks:  "Taken in the light most

7    favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated

8    a constitutional right?"  Id. at 201.  If "a violation could be made out on a favorable view of the

9    parties' submissions, the next, sequential step is to ask whether the right was clearly established."

10   Id.  To be "clearly established," "[t]he contours of the right must be sufficiently clear that a

11   reasonable official would understand that what he is doing violates that right."  Id. at 202 (internal

12   quotation marks and citation omitted).  Accordingly, for the purposes of the second prong, the

13   dispositive inquiry "is whether it would be clear to a reasonable officer that his conduct was

14   unlawful in the situation he confronted."  Id.  Courts have the discretion to decide which prong to

15   address first, in light of the particular circumstances of each case.  See Pearson v. Callahan, 555

16   U.S. 223, 236 (2009).

17        The Ninth Circuit has ruled that a defendant is entitled to qualified immunity if he or she

18   acts pursuant to official prison policies if the policies are not themselves "patently violative of

19   constitutional principles."  Brown v. Mason, 288 Fed. Appx. 391, 392-93 (9th Cir. 2008);

20   Dittman v. California, 191 F.3d 1020, 1027 (9th Cir. 1999); Grossman v. City of Portland, 33

21   F.3d 1200, 1209 (9th Cir. 1994).  As explained in Grossman:

22              As with most legal matters, there are no absolutes here. On the one
              hand, an officer who acts in reliance on a duly-enacted statute or
23              ordinance is ordinarily entitled to qualified immunity. [Footnote
              omitted.] On the other, as historical events such as the Holocaust and
24              the My Lai massacre demonstrate, individuals cannot always be held
              immune for the results of their official conduct simply because they
25              were enforcing policies or orders promulgated by those with superior
              authority. Where a statute authorizes official conduct which is
26              patently violative of fundamental constitutional principles, an officer
              who enforces that statute is not entitled to qualified immunity.
27              Similarly, an officer who unlawfully enforces an ordinance in a
              particularly egregious manner, or in a manner which a reasonable
28              officer would recognize exceeds the bounds of the ordinance, will

                                            31

1

2

3

> not be entitled to immunity even if there is no clear case law declaring the ordinance or the officer's particular conduct unconstitutional.  See Chew, 27 at 1449-50.  In the end, however, an officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from liability.

4   Grossman, 33 F.3d at 1209-10

5          In denying plaintiff's grievances, defendants relied on (and complied with) DOM

6   § 54046.10, which provided that single-cell status could only be granted with a recommendation

7   from mental health staff.  DOM § 54046.10 is not patently violative of constitutional principles.

8   Accordingly, defendants should be granted summary judgment on the grounds that they are

9   entitled to qualified immunity.

10               E.   Plaintiff's Eighth Amendment Claim Against Defendant Haring

11         Defendants move for summary judgment on the merits of plaintiff's Eighth Amendment

12   claim against defendant Haring.  As discussed above, the undersigned recommends that defendant

13   Haring be granted summary judgment as to this claim on the grounds that it is barred by the

14   statute of limitations and on the grounds that plaintiff released this claim in the settlement

15   agreement reached in Coleman v. CDCR, 2: 13-cv-1021 JAM KJN P (E.D.).  For these reasons,

16   the undersigned need not consider the merits of plaintiff's Eighth Amendment claim against

17   defendant Haring.

18      VI.       Plaintiff's Cross-Motion for Summary Judgment (ECF No. 84)

19               A.   Claim Against Defendants Haring and Virga Regarding Side-by-Side Bed Cells

20         Plaintiff moves for summary judgment as to his claim that defendant Haring violated his

21   Eighth Amendment rights by placing him in a cell with side-by-side beds in September 2011.

22   Plaintiff also moves for summary judgment as to his claim that defendant Haring placed him in a

23   side-by-side bed cell pursuant to a policy enacted by defendant Virga.

24         As discussed above, plaintiff's Eighth Amendment claim against defendant Haring is

25   barred by the statute of limitations and released by plaintiff's prior settlement agreement.

26   Plaintiff's claim that defendant Virga enacted a policy resulting in his placement in the side-by-

27   side bed cell is released by plaintiff's prior settlement agreement.  For these reasons,  the

28   undersigned need not consider the merits of plaintiff's summary judgment motion as to these

1  claims.  Accordingly, plaintiff's summary judgment motion as to these claims should be denied.

2                          B.  <u>Claims Against Defendants Hinrichs, Lynch and Virga</u>

3         In his summary judgment motion, plaintiff argues that defendants Hinrichs, Lynch and

4  Virga violated his Eighth Amendment rights when they failed to consider his mental health needs

5  when they denied his grievance requesting single-cell status.  Plaintiff alleges that defendants

6  followed a policy which permitted single-cell status only for inmates with a history of in-cell

7  physical or sexual violence against a cellmate.

8         Plaintiff refers to the following evidence in support of his cross-motion for summary

9  judgment with respect to his claims against defendants Hinrichs, Lynch and Virga.  Plaintiff cites

10  the January 23, 2004 record by Dr. Dias referring plaintiff for evaluation for single-cell status.

11  (ECF No. 84 at 14.)  Plaintiff also cites the 2016 memorandum, authored by Secretary Kernan,

12  authorizing custody staff to submit requests for review related to single-cell consideration if there

13  are questions whether a mental health condition  is present.  (<u>Id.</u>)  Plaintiff also argues that

14  defendants were aware of Dr. Curren's July 2013 order for plaintiff to be involuntarily medicated.

15  (<u>Id.</u> at 17.)  Plaintiff also argues that defendants were aware that plaintiff was a danger to himself

16  based on the suicide risk evaluations prepared by Dr. Grosse and Dr. Bowerman.  (<u>Id.</u>)

17         Plaintiff provides no evidence of a policy that permitted single-cell status only for inmates

18  with a history of in-cell physical or sexual violence.  As discussed above, at the time defendants

19  reviewed plaintiff's grievances, the relevant regulations provided that single-cell status could be

20  granted based on mental health concerns with a recommendation from mental health staff.

21  Plaintiff also provides no evidence that mental health staff recommended him for single-cell

22  status or exclusion from cells with side-by-side beds at the time of the July 3, 2013 ICC hearing

23  or at the time defendants reviewed his grievances.

24         Because the record contains no evidence that defendants denied plaintiff's grievances

25  pursuant to a policy permitting single-cell status only for inmates with a history of in-cell

26  physician or sexual violence, plaintiff's motion for summary judgment as to this claim should be

27  denied.  Because the record contains no evidence that defendants failed to consider plaintiff's

28  mental health in denying his grievances requesting single-cell status and exclusion from cells with

33

1 | side-by-side beds, plaintiff's motion for summary judgment as to this claim should be denied.

2 | Accordingly, IT IS HEREBY ORDERED that, upon reconsideration, defendants' motion

3 | to strike plaintiff's sur-reply (ECF No. 90) is denied; and

4 | IT IS HEREBY RECOMMENDED that:

5 | 1. Plaintiff's cross-motion for summary judgment (ECF No. 84) be denied;

6 | 2. Defendants' summary judgment motion (ECF No. 80) be granted for the reasons

7 | discussed above.

8 | These findings and recommendations are submitted to the United States District Judge

9 | assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

10 | after being served with these findings and recommendations, any party may file written

11 | objections with the court and serve a copy on all parties.  Such a document should be captioned

12 | "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

13 | objections shall be filed and served within fourteen days after service of the objections.  The

14 | parties are advised that failure to file objections within the specified time may waive the right to

15 | appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16 | Dated:  January 4, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Cole851.57(2)

34